**McCUBBIN et al., Appellants,**

v.

**MICHIGAN LADDER COMPANY et al., Appellees.**

[Cite as *McCubbin v. Michigan Ladder Co.* (1996), 112 Ohio App.3d 639.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950341.

Decided July 17, 1996.

*Casper & Casper* and *Arthur B. Casper,* for appellants.

*McCaslin, Imbus & McCaslin* and *John J. Finnigan,* for appellees.

MARIANNA BROWN BETTMAN, Judge.

Plaintiff-appellant, Frank McCubbin, was injured when the rung of a wooden ladder upon which he was standing broke. As a result of the break, McCubbin fell fifteen feet and sustained various injuries. The ladder had affixed to it a label from the Dayton Safety Ladder Company. The Dayton Safety Ladder Company is a wholly owned subsidary of the Michigan Ladder Company.

The McCubbins filed suit against the Michigan Ladder Company and the Dayton Safety Ladder Company, appellees, claiming, pursuant to Ohio's products liability law, that the ladder at issue was defectively designed and manufactured

and that appellees failed to warn or adequately warn of the ladder's dangers. In addition, Martha McCubbin claimed loss of consortium.

The appellees moved for summary judgment on both claims, alleging that they did not manufacture the ladder in question, that the product was not defective, and that the ladder had been misused.

To overcome appellees' motion for summary judgment, the McCubbins submitted, among other materials, the affidavit and deposition testimony of Dr. James Myers. Myers has a Ph.D. in metallurgical engineering and specializes in materials analysis. He inspected the rung upon which McCubbin had been standing when he fell, and gave his opinion as to the cause of the break. Myers stated that the rungs of the ladder in question were not fastened to the sides of the ladder adequately, and that this error caused the rung upon which McCubbin was standing to fail.

Citing Evid.R. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469, the lower court determined (1) that Myers was not properly qualified to testify as to the reasons for the rung failure, and (2) that Myers's theory was unreliable because it was unsupported by any verifiable testing techniques and was based solely on his perceptions. Consequently, the court did not consider the testimony of Myers in ruling on appellees' motion for summary judgment. Absent Myers's opinions, there was no evidence to demonstrate that there was a material issue of fact about whether the ladder was defective. Accordingly, the lower court entered summary judgment in favor of appellees. This appeal followed.

The McCubbins raise four assignments of error:

"1. The trial court erred in granting summary judgment as reasonable minds could conclude that there were genuine issues of material fact and defendants were not entitled to judgment as a matter of law.

"2. When the product is defective due to inadequate warning or instruction as set forth in 2307.76 of the Ohio Revised Code, the court erred in granting summary judgment when genuine issues of material fact remained on this issue.

"3. The lower court erred in granting summary judgment for the defendants when reasonable minds could conclude that genuine issues of material fact existed as to the defendants' liability as supplier pursuant to section 2307.78 of the Ohio Revised Code.

"4. As the right of trial by jury shall be inviolate in civil cases as guaranteed by Section 5 of Article I of the Ohio Constitution, a summary judgment and judgment by the court should scrupulously follow the requirements of Ohio Rule of Civil Procedure 56(C) that there are no genuine issues as to any material facts,

and that the moving party is entitled to judgment as a matter of law, after having all evidence construed most strongly in his favor."

We interpret the first and fourth assignments of error as challenging the lower court's exclusion of Myers's opinions when it ruled on appellees' motion for summary judgment.

### Standard for Admissibility of Expert Testimony

Since the lower court determined both that Myers was not properly qualified to testify and that his testimony was unreliable, Evid.R. 104(A) and 702 are relevant to our inquiry.[1]

### Myers's Qualifications

■ Pursuant to Evid.R. 104(A) and 702, it is the function of the trial court to make a preliminary determination about whether a particular witness qualifies as an expert witness. On appeal, this court may not overturn such a decision absent an abuse of discretion. *State v. Tomlin* (1992), 63 Ohio St.3d 724, 590 N.E.2d 1253.

■ In order to qualify as an expert witness, a potential witness does not have to be the most knowledgeable or the best witness regarding the topic at hand. *Scott v. Yates* (1994), 71 Ohio St.3d 219, 643 N.E.2d 105; *Vistein v. Keeney* (1990), 71 Ohio App.3d 92, 593 N.E.2d 52. Instead, the relevant inquiry is whether the proposed witness possesses knowledge such that his or her testimony will aid the trier of fact. Evid.R. 702; *Scott* and *Vistein, supra.*

---

1. Evid.R. 702, as amended July 1, 1994, provides:
   "A witness may testify as an expert if all of the following apply:
   "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
   "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
   "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
   "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
   "(2) The design of the procedure, test, or experiment reliably implements the theory;
   "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
   Evid.R. 104(A) provides:
   "(A) Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (B). In making its determination it is not bound by the rules of evidence except those with respect to privileges."

■ The McCubbins' proposed expert witness, James Myers, has a Ph:D. in metallurgical engineering from Ohio State University. From 1962 to 1979, Myers worked for the United States military teaching classes about various materials and their qualities. From 1979 to the present, Myers has worked as a professional consultant conducting failure analyses on items and advising his clients as to the types of materials that should be used in various projects in order best to avoid a materials failure. He has conducted over two thousand material-failure analyses and works with many kinds of materials including plastics, ceramics, metals and woods. Myers has studied fracture propagation extensively and claims that, in this field, the same rules and principles are applied to all materials, including wood. Although most of Myers's work seems to focus on the properties of metals, Myers has conducted at least ten analyses on wood. In these analyses, he was required to establish the reasons for wood failure.

While Myers does not specialize in the causes of wood failure *per se,* he is an expert in material-failure analysis as evidenced by his formal education and years of experience in this field. Based on this information, we hold that the trial court abused it discretion in ruling that Myers was not properly qualified to testify as to the cause of the rung failure.

### The Reliability of Myers's Theory

The role of the trial court in determining the reliability of expert testimony is more problematical than its determination of the expert's qualifications. Under Ohio law, the reliability of an expert's opinion has generally been considered a matter of weight, rather than admissibility. See, *e.g., State v. Pierce* (1992), 64 Ohio St.3d 490, 597 N.E.2d 107 (questions regarding the reliability of DNA evidence in a given case go to the weight of the evidence rather than its admissibility); *State v. Williams* (1983), 4 Ohio St.3d 53, 4 OBR 144, 446 N.E.2d 444 (rejecting the *"Frye* test" of general acceptance in the scientific community as a condition of admissibility and adopting a standard of relevance and assistance to the trier of fact).

The amendment of Evid.R. 702 in 1994 infused confusion into the role of the trial court in regard to the significance of the reliability of scientific evidence and tests. Though persuasive authority only, the Staff Note to the rule insists that no substantive change from prior law is intended. However, it appears from the text of the rule, particularly Evid.R. 702(C), that the reliability of expert testimony has become a precondition to admissibility, that the rule sets the standard for reliability, and that, when the rule is combined with Evid.R. 104(B), the trial court plays a gatekeeper function to evaluate reliability. The 1994 Staff Note adds:

"[T]he amended rule does not attempt to define the standard of reliability but leaves that to further development through case-law. The amendment also leaves unchanged Ohio's rejection of *Frye* as the exclusive standard of reliability. * * * [T]he United States Supreme Court's discussion [in *Daubert*] of the considerations that may be relevant to a reliability determination may also be helpful in construing the Ohio rule."

Given what appear to be inconsistencies among the text of the rule, the prior case law and the Staff Note, we leave it for another day to determine whether Evid.R. 702(C) now requires an evaluation by the trial court of the reliability of the scientific theory being espoused by an expert as a precondition of its admissibility and, if so, precisely how the trial court is to perform this evaluation. We need not decide this now because, in the case at hand, the trial judge went beyond an examination of reliability and ruled Myers's testimony inadmissible because the court found his opinions not to be credible.

### Myers's Testimony and the Lower Court's Ruling

Myers offered testimony based on a visual examination of the rung in question. After viewing the rung, Myers applied allegedly well-established principles of engineering, materials analysis, and fracture propagation in order to draw a conclusion as to the cause of the fracture of the rung. Particularly relevant portions of Myers's testimony are as follows:

"Staples were used by the manufacturer of the ladder I examined to secure the rungs from movement within the rails of said ladder. By inserting staples into the tenons, the narrow end parts of the rung that fit into the rail, cracks or hairline cracks were caused in the tenons. Based upon a reasonable degree of engineering certainty, I opine that these hairline cracks or fractures most probably occurred when the ladder was constructed and continued to propagate during use until it reached the critical crack length where catastrophic fracture occurred, which fracture directly caused Frank McCubbin to fall. I examined the rung that failed and I found the macroscopic cracks are the ones that you can see with your eye run [*sic*] parallel to the grain of the rung. This is significant because the fracture occurred in a mode that is consistent with existing knowledge of crack propagation and fracture mechanics.

" * * * *

"[T]his product defect was the direct and proximate cause of the rung failure on the ladder that I examined, which failure directly caused the McCubbin fall.

" * * * *

"In my professional opinion, and based upon reasonable engineering certainty, the design and use of metallic staples instead of nails to prevent movement in the

ladder in question is a defective design and use, whereby an inevitable process of immediate fracture and propagation of fracture and catastrophic failure is set into motion."

Citing *Pierce* and *Daubert, supra,* the Staff Note to Evid.R. 702 provides:

"Under Ohio law it is also clear that reliability is properly determined only by reference to the principles and methods employed by the expert witness, without regard to whether the court regards the witness's conclusions themselves as persuasive or correct." [2]

■ In ruling on appellees' motion for summary judgment, the trial court held, in part, that Myers's testimony should be excluded because it was "based solely upon [Myers's] perceptions." The court also referred to Myers's theory as "junk science."

Given the nature of Myers's testimony, we believe that a visual examination of the rung in question was a legitimate method of determining a possible cause of its failure. It is clear from the trial court's decision that the court simply did not believe Myers's conclusions. This was not the trial court's role, and it constitutes an abuse of discretion.

In sum, we hold that the lower court abused its discretion in ruling that Myers was not qualified to testify as to the cause of the rung failure. We also hold that the trial court abused its discretion in not considering Myers's testimony on the ground that it was not credible. Consequently, we hold that the lower court erred in excluding Myers's testimony from its consideration before ruling on appellees' motion for summary judgment, and we sustain the McCubbins' first and fourth assignments of error to the extent that they raise this issue. In so holding, we express no opinion as to the merits of appellees' motion for summary judgment or the McCubbins' response to it. This case is remanded with instructions to the lower court to consider Myers's opinions in ruling on appellees' motion for summary judgment.

The issues raised in the second and third assignments of error were never ruled on by the trial court and, therefore, are not properly before this court.

The matter is remanded for further proceedings consistent with law and this opinion.

*Judgment reversed*
*and cause remanded.*

GORMAN, P.J., and PAINTER, J., concur.

---

2. See, also, *Williams, supra; Goddard v. Children's Hosp. Med. Ctr.* (June 12, 1996), Hamilton App. Nos. C–950278 and C–950295, unreported, 1996 WL 312474 (Gorman, J., concurring separately); Weissenberger's Ohio Evidence (1996) 301, Section 702.5.