FRANKS, Admr., et al., Appellants,

v.

LOPEZ, Appellant; Sandusky County Board of
County Commissioners et al., Appellees.

[Cite as *Franks v. Lopez* (1997), 121 Ohio App.3d 523.]

Court of Appeals of Ohio,
Sixth District, Sandusky County.

No. S–96–002.

Decided July 18, 1997.

*Edward A. Van Gunten,* for appellants Lisa M. Franks et al.

*Thomas J. Tucker,* for appellant Rhonda L. Lopez.

*Jessica Christy Kerger,* for appellees.

---

*Per Curiam.*

On April 2, 1997, this court issued a decision and judgment entry in which we discussed the facts and procedure in this case, set forth the assignments of error and ruled that the trial court incorrectly dismissed the entire case on the basis of a ruling on a motion for summary judgment that addressed issues relating to only the Sandusky County Board of Commissioners and the Sandusky County Engineer. This court therefore remanded this case to the Sandusky County Court of Common Pleas to permit the trial court to enter a *nunc pro tunc* judgment entry if that reflected an original intent of the trial court to certify the issues relating to the commissioners and the engineer for appeal pursuant to Civ.R. 54(B).

On April 4, 1997, the trial court filed a *nunc pro tunc* entry, and the appeal was returned to this court.[1] This court will not now repeat our recitation of the facts and procedure in this case or the analysis we have already made of some of the assignments of error; instead, we have attached as an appendix to this decision our decision and judgment entry of April 2, 1997. We now consider the remaining assignments of error, which all relate to the rulings that the trial court made to support its conclusion that the commissioners and the engineer were entitled to summary judgment.

The focus of the remaining dispute between the parties in this case is whether the commissioners and the engineer had a duty, pursuant to R.C. 5591.36, to

---

1. Following the journalization of the trial court's *nunc pro tunc* entry, this court received a motion for modification of that entry and a separate notice of appeal from that entry. However, the dispute that gave rise to the motion and the separate notice of appeal was resolved, and the motion and the separate notice of appeal were dismissed by agreement of the parties and by order of this court.

install a guardrail at the location where the accident took place. The version of R.C. 5591.36 in effect when appellants filed their complaint [2] provided in part:

"The board of county commissioners shall erect and maintain, where not already done, one or more guardrails on each end of a county bridge, viaduct, or culvert more than five feet high and on each side of every approach to a county bridge, viaduct, or culvert, if the approach or embankment is more than six feet high. The board shall also protect, by suitable guardrails, all perpendicular wash banks more than eight feet in height, where such banks have an immediate connection with a public highway other than state highways, or are adjacent thereto in an unprotected condition."

An expert witness for appellants, John E. Pflum, testified by deposition and averred by affidavit that the angle of the wash bank where the accident occurred was sixty-seven to seventy degrees. The testimony and averments provided by Pflum show that he is a registered engineer with over twenty-three years of experience in highway design, traffic engineering, and safety engineering. As part of his engineering training, he studied and performed surveying.

As we previously noted in earlier decisions from this court, the commissioner and the engineer first assailed Pflum's testimony by arguing that even if the measurements he made of the wash bank were accurate, the wash bank could not be considered perpendicular. Following the ruling of this court and of the Supreme Court of Ohio that an angle of sixty-seven or seventy degrees could be considered perpendicular under the provisions of R.C. 5591.36, see *Franks v. Lopez* (1994), 69 Ohio St.3d 345, 632 N.E.2d 502, the commissioner and the engineer filed a new motion for summary judgment in the trial court. In support of the new motion, they argued that the method used by Pflum to establish his finding that the angle of the wash bank was sixty-seven or seventy degrees was unreliable. The method in question was the use of an inclinometer or a slope meter.

Appellants filed a memorandum in opposition to the motion for summary judgment, with an affidavit from Pflum. The commissioners and the engineer filed a reply. The trial court then issued a judgment entry in which it converted the motion for summary judgment to a motion *in limine*, and set a hearing date.

A hearing was held on the motion *in limine*. The commissioners and the engineer called an expert witness, Robert B. Ernsberger, who is a licensed surveyor in Ohio. He testified that he had been hired by the commissioners and the engineer to complete a topographical survey of the riverbank near the site of the accident. He used a "Total Station Method" to conduct the survey. He

---

2. The statute has since been amended, effective January 27, 1997. 1996 Am.Sub.H.B. No. 350.

stated that that is the method used to complete about "eighty percent of the surveys anymore." He took measurements in nine locations, which were approximately twenty feet apart. The results of his survey showed that the average slope of the riverbank was "approximately forty degrees." The maximum slope of the riverbank over a measured drop of eight feet was "approximately 47 degrees."

He testified that he was told that appellants' expert, Pflum, used an instrument referred to as an inclinometer or a slope meter to measure the angle of the riverbank where the accident occurred. He testified that he had never seen or used an inclinometer. He also testified that he did not know of any surveyor who used an inclinometer to complete a topographical survey. When he was asked if the inclinometer is an acceptable and well-recognized method of surveying, he answered: "I don't believe so. I have no way of knowing. It's not used, it's not taught, so I don't believe so, no, sir." He stated that, in his opinion, the inclinometer was not accurate or reliable.

Following the hearing, the commissioners and the engineer filed an amended motion for summary judgment in which they requested that appellants be required to submit evidence to show that Pflum's testimony was admissible at trial. The commissioners and the engineer again argued that the method used by Pflum to measure the angle of the wash bank was unreliable. They contended that Pflum's testimony was inadmissible. They further argued that the testimony of their own expert showed that the angle of the wash bank was not perpendicular. Finally, they pointed to the deposition testimony of Lawrence F. Wilson, an engineer who served as an expert to appellants. They stated that Wilson's findings supported the findings of their own expert.[3]

Appellants responded to the amended motion for summary judgment by filing a memorandum in opposition, accompanied by a deposition from an expert, George Oravecz. Oravecz averred that he is a licensed engineer and a registered surveyor in Ohio. He also averred that he had personally examined the inclinometer used by Pflum and that it is "one of several similar instruments that are regularly used to measure angles including angles of depression." He stated that particular statements contained in Pflum's affidavit were "true accurate and complete."

Among the statements made by Pflum which Oravecz reviewed and adopted as true, accurate, and complete were an acknowledgment that there are several

---

3. The commissioner and the engineer made this argument after discounting the results of measurements made by Wilson using an inclinometer. Wilson used the inclinometer over a nine-foot span and concluded that the angle of the slope of the bank was sixty degrees. Wilson also made topographical measurements of the area, and those were the figures which were cited as supporting the findings of Ernsberger.

methods for measuring a slope or angle and a statement that "an inclinometer or a 'slope meter' is regularly used by surveyors for a number of purposes and is well recognized as being reliable." Oravecz also concurred that "the results obtained by the use of the inclinometer or a 'slope meter' are accurate within one to two degrees."

Oravecz averred that a formal topographical survey "is not usually necessary to determine the slope of a bank or angle. In fact, such a formal topographical survey as performed by [the expert for the commissioners and the engineer] using his 'total station' never directly measures the angle of the river bank. Instead, it measures the distance to a selected point and the elevation of that paint [sic]. The computer then calculates the distance between such points."

He stated that an inclinometer can "yield a more accurate approximation of the effective slope than measuring it because such method in fact measures the average slope over the distance of the straight edge, whereas the method utilized by [the expert for the commissioners and the engineer] only measures the two points and presumes that all of the slope in between is the same."

The trial court concluded that the inclinometer used by appellants' experts, John E. Pflum and Lawrence F. Wilson, to measure the slope of the wash bank at the accident site was not reliable. The trial court initially concluded that the inclinometer is not objectively verifiable when it noted that Pflum and Wilson obtained results that "are at best 7 degrees, and at worst, 15 degrees different." Second, the trial court applied a four-part test it apparently drew from a decision of the Supreme Court of the United States in *Daubert v. Merrell Dow Pharmaceuticals* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. The trial court noted that it had no proof that an inclinometer is regularly used by professionals, that the experts have ever used an inclinometer for any purpose except on this occasion, that there were any publications listing information for error rates and control techniques or peer review, or that any expert believed the inclinometer "measured anything but the slope of the rod upon which the inclinometer was placed." The trial court therefore ruled that Pflum's testimony regarding the degree of the wash bank slope was not admissible pursuant to Evid.R. 702(C) because it was not based upon a test that was demonstrated to be objectively verifiable or reliable.

The trial court then stated that "when considering [sic] an eight-foot drop, there is no evidence of a slope greater than fifty degrees." The trial court stated that it concluded that the wash bank was not perpendicular and that the commissioners and the engineer had no obligation, pursuant to R.C. 5591.36, to install a guardrail. The trial court then granted summary judgment to the commissioners and to the engineer as to all claims pending against them.

In support of their first assignment of error, appellants argue that the trial court erred when it ruled that the inclinometer used by their experts to measure the slope of the wash bank was unreliable. Appellants also argue that the trial court erred when it excluded testimony from their experts regarding the slope of the wash bank.

Evid.R. 702 provides:

"A witness may testify as an expert if all of the following apply:

"(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

"(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

"(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

"(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

"(2) The design of the procedure, test, or experiment reliably implements the theory;

"(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

The trial court found that the requirement of Evid.R. 702(A) was met in this case because determining the slope of a wash bank is beyond the common knowledge of laypersons. The trial court ruled by implication that appellants' experts meet the requirements of Evid.R. 702(B). Accordingly, the only question left is whether the trial court abused its discretion when it ruled that the requirements of Evid.R. 702(C) were not met when an instrument called an inclinometer was used to measure the angle of the wash bank slope. See *Frank v. Vulcan Materials Co.* (1988), 55 Ohio App.3d 153, 155, 563 N.E.2d 339, 342. After carefully reviewing the statements in the record of all of the experts and considering Ohio law, we conclude that the trial court did abuse its discretion when it ruled that the testimony of appellants' experts was inadmissible pursuant to Evid.R. 702(C).

As the Eighth District Court of Appeals has noted:

"Under Evid.R. 702(C), expert testimony must meet a 'threshold standard of reliability.' Evid.R. 702, Staff Note (July 1, 1994). Under Ohio law, "* * *

reliability is properly determined only by reference to the principles and methods employed by the expert witness, without regard to whether the court regards the witness's conclusions themselves as persuasive or correct.' *Id.* Although reliability generally goes to the weight of expert testimony rather than to its admissibility, the threshold criteria for the admissibility of reliable expert testimony [are] set forth in Evid.R. 702(C). See, also, *State v. Pierce* (1992), 64 Ohio St.3d 490, 498 [597 N.E.2d 107, 113] (absent evidence of deficient testing standards, the court could not find DNA test results unreliable as a matter of law)." *McConaughy v. Herholz* (Jan. 30, 1997), Cuyahoga App. Nos. 70186, 70258, and 70481, unreported, 1997 WL 37759.

The trial court therefore does have a limited gatekeeper function under Evid.R. 702(C), but the trial court in this case exceeded its function and abused its discretion.

Testimony in this case does not establish that Pflum or Wilson used deficient methods to ascertain the angle of the wash bank where the accident occurred. Robert B. Ernsberger, who testified on behalf of the commissioners and the engineer, was not able to explain how the inclinometer was unreliable because he had never examined the inclinometer and was not familiar with its use. Blanket statements that the inclinometer are not generally used by surveyors in Ohio to complete topographical surveys are not sufficient to demonstrate how the results obtained when an inclinometer is used are unreliable. Furthermore, the record shows that the true dispute between the experts is a dispute over which is the best method to ascertain the angle of the wash bank in question. Ernsberger, a surveyor with expertise in completing topographical surveys, testified that the "total station method" is the best method to determine the average slope of an area. Pflum, Wilson and Oravecz, all engineers with training and/or licensing in surveying, testified that a topographical survey is not the best method to determine the angle of a wash bank because it uses averages, and does not identify the exact angle of the location where the accident occurred. Pflum, Wilson and Oravecz all stated that the inclinometer is an appropriate tool to use to determine the angle of a wash bank at the site where an accident occurred and that it is reliable and accurate to within one to two degrees.

Such a dispute calls into question the weight to be assigned to the evidence and is by its very nature an issue of reliability that must be determined by the jury as a trier of fact. See *McCubbin v. Michigan Ladder Co.* (1996), 112 Ohio App.3d 639, 643–645, 679 N.E.2d 1142, 1144–1145; see, also, *Goddard v. Children's Hosp. Med. Ctr.* (June 12, 1996), Hamilton App. Nos. C–950278 and C–950295, unreported, 1996 WL 312474 (Gorman, J., concurring). Accordingly, the trial court exceeded its limited role as a gatekeeper and erroneously based its ruling upon its conclusion that the results reached by appellants' experts were not credible.

The testimony of appellants' experts is admissible, and a jury question remains to be determined at trial. Appellants' first assignment of error is well taken.

In support of their second and third assignments of error, appellants argue that the trial court did not use proper law when it determined that the slope of the wash bank in question is not perpendicular. The specific portion of the trial court decision that is questioned by appellants provided:

"R.C. 5591.36 requires a board of county commissioners to provide guardrails for 'all perpendicular wash banks more than eight feet in height, where such banks have an immediate connection with a public highway other than state highways, or are adjacent thereto in an unprotected condition.'

"The Sixth District Court of Appeals in this case has held, and the Supreme Court has affirmed, that a perpendicular wash bank can include a 70 degree wash bank. In this case, the only evidence that the wash bank in question had a slope of 70 degrees was as to a less than six-foot drop and from Mr. Pflum after he and Attorney VanGunten made their measurements with the inclinometer. There is no other admissible evidence that the wash bank in question and at the location in question is greater than 56.5 degrees at its steepest places, and the distance over which that slope was calculated from Mr. Wilson's measurements was substantially less than an eight-foot drop. And when conderating [*sic*] an eight-foot drop, there is no evidence of a slope greater than fifty degrees. Since a trial Court must instruct a jury as to the legal meaning of ambiguous terms, it is important to identify the state of the law in Ohio as to the meaning of such terms. As to what is perpendicular and what is not, when referring to R.C. 5591.36, pursuant to [*Board of*] *Commissioners [of Wyandot County] v. Boucher* (1918), 98 Ohio St. 263 [120 N.E. 700] a bank which slopes at forty-five degree [*sic*] is not perpendicular; and pursuant to *Jenkins v. Harrison Twp. Trustees* (Oct. 4, 1982), Scioto App. No. 1385, unreported, 1982 WL 3545, a sixty-five to seventy degree drop over eighteen feet is 'perpendicular' within the meaning of the statute. With that limited assistance, this Court then concludes that R.C. 5591.36 does not apply to a wash bank with a slope of 56.5 degrees over less than an eight-foot drop, where all average slopes for the relevant location over an eight-foot drop in evidence are less than fifty degrees."

The Fifth District Court of Appeals recently considered the same issue now presented in this appeal. *Pittenger v. Richland Cty. Commrs.* (Mar. 14, 1996), Richland App. No. 95–CA32–2, unreported, 1996 WL 132410. The court stated:

"Case law has defined perpendicular as used in R.C. 5591.36. In [*Board of*] *Commissioners [of Wyandot County] v. Boucher* (1918), 98 Ohio St. 263 [120 N.E. 700], the Ohio Supreme Court held: ' * * * a wash bank with an angle approximately 45 degrees is certainly not a perpendicular bank within the plain meaning of the term as used in the section.' *Boucher* at 265 [120 N.E. at 701].

In *Franks v. Lopez* (1994), 69 Ohio St.3d 345, 632 N.E.2d 502, the Supreme Court opined a bank with a slope of 65 degrees or higher may be considered as perpendicular for purposes of the statute. The *Franks* court cited with approval *Jenkins v. Harrison Township Trustees* (October 4, 1982), Scioto Appellate # 1385, unreported [1982 WL 3545]. *Jenkins* held that to construe the word perpendicular in its mathematical meaning, namely, 90 degrees, would render the statute almost meaningless, because in a natural condition very few, if any, wash banks are exactly 90 degrees. The *Jenkins* court noted wash banks generally carry sediment from the top, allowing it to accumulate at the bottom. Over time and in accordance with general principles of erosion, wash banks change their angles. *Franks* at 350–351 [632 N.E.2d at 505–506] citing *Jenkins*.

"* * *

"The statute uses the word 'perpendicular' and the mathematical definition of that word is 90 degrees. The Supreme Court has held perpendicular means at least 65 degrees (*Franks*) but more than 45 degrees (*Boucher*). Between 45 and 65 is a no man's land where there is no case law and little guidance."

■ The *Pittenger* court then concluded that a jury question remained in the case regarding whether the slope of the wash bank, which was measured as never exceeding forty-five degrees, was perpendicular. *Id.* Likewise, we conclude that reasonable minds could reach different conclusions regarding the measurement of the wash bank in this case, and whether the wash bank is sufficiently perpendicular to impose liability on the county for failing to erect a guardrail. See *id.; Paul v. Moore* (1995), 102 Ohio App.3d 748, 658 N.E.2d 10 (jury instruction that perpendicular is more than forty-five degrees). Appellants' second and third assignments of error are well taken.

■ Appellants contend in support of their seventh assignment of error that expert testimony is not needed to establish the slope of the wash bank in question. As we have previously noted, Evid.R. 702(A) provides that an expert should testify if "[t]he witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons."

We believe that the question presented in this case regarding the slope of the wash bank relates to matters beyond the knowledge or experience possessed by lay persons. Accordingly, appellants' seventh assignment of error is not well taken.

In support of their eighth assignment of error, appellants contend that the trial court should not have dismissed their cases against the commissioners and the engineer just because it did not accept the testimony of one of appellants' expert witnesses, Pflum. Appellants argue that their other expert witness, Lawrence

Wilson, would present testimony showing that the slope of the wash bank was forty-six to forty-nine degrees. Our review of the trial court's decision shows that the trial court did consider the testimony from Lawrence Wilson before it granted the amended motion for summary judgment. In addition, our ruling on the first assignment of error renders this assignment of error moot.

In support of their ninth and final assignment of error, appellants argue that the trial court should not have dismissed their cases against the commissioners and the engineer on the basis that the inclinometer was unreliable without first allowing appellants to remeasure the slope of the wash bank using an approved method. Once again, our disposition of the first assignment of error renders this assignment of error moot.

In summation, this court has concluded that the trial court abused its discretion when it excluded the testimony from appellants' experts regarding the slope of the wash bank. This court has also concluded that a jury question remains regarding whether the wash bank was sufficiently steep to render the commissioners and the engineer liable for failing to install a guardrail. Therefore, this court reverses the summary judgment granted to the commissioners and the engineer by the trial court and remands this case for further proceedings consistent with this decision. The commissioners and the engineer are ordered to pay the court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

HANDWORK, GLASSER and SHERCK, JJ., concur.

## APPENDIX

### Decision and Journal Entry of April 2, 1997

*Per Curiam.*

This is an appeal from a February 1, 1996 judgment of the Sandusky County Court of Common Pleas in which the court granted summary judgment to appellees, the Sandusky County Board of Commissioners and the Sandusky County Engineer, and entered an order dismissing the case. The procedural history of this appeal is complex, and includes a previous appeal to this court, *Franks v. Sandusky Twp. Bd. of Trustees* (Mar. 31, 1992), Sandusky App. No. S–91–18, unreported, 1992 WL 66561, and to the Supreme Court of Ohio, *Franks v. Lopez* (1994), 69 Ohio St.3d 345, 632 N.E.2d 502. The judgment from which this current appeal is brought was entered by the trial court following a remand of the case to the trial court by the Supreme Court of Ohio.

We have previously given a detailed account of the facts in this case, *Franks v. Sandusky Twp. Bd. of Trustees* (Mar. 31, 1992), Sandusky App. No. S–91–18, unreported, 1992 WL 66561 and will limit our discussion of the facts to a brief summary for the purposes of this appeal. This case originally arose from two separate wrongful death claims that were consolidated for trial. The wrongful death claims were filed by appellants, Lisa Franks and M. Carol Bryant, acting in their administrative capacities for the estates of two passengers who drowned when the car in which they were riding hurtled down a bank and landed upside down in a river after being driven off the road at a curve in a road where no guardrail was in place.

Both plaintiffs subsequently filed amended complaints that named several defendants, including the commissioners and the engineer; the Sandusky Township Board of Trustees; Rhonda L. Lopez, the driver of the car that landed in the river; and Adrian Zavala, the boyfriend of one of the deceased passengers, who was allegedly driving his car in a chase after the driver's car that led to the accident.[1] The claims against the commissioners, the engineer and the trustee were based upon allegations that they failed to design or maintain a safe roadway. The claims against the driver and the boyfriend were based upon allegations that they drove recklessly.

The driver of the car filed cross-claims against the trustees, the commissioners, the engineer and the boyfriend. She sought indemnification and compensation for injuries she sustained in the accident. The trustees, the commissioners, and the engineer filed answers to the cross-claims of the driver and filed separate cross-claims of their own. The trustees, commissioners, and engineer named the driver and the boyfriend as defendants in their cross-claims and sought indemnification. The driver filed answers to the cross-claims, but the boyfriend did not answer appellants' complaints or any of the cross-claims.

The commissioners and engineer filed a motion for summary judgment against appellants' amended complaints and against the driver's cross-claims. The trustees also filed a motion for summary judgment against appellants' amended complaints and against the driver's cross-claims. Appellants filed a motion for partial summary judgment against the commissioners, the engineer, and the trustees for liability.

The trial court considered all of the motions and memorandums in opposition to the motions and issued a judgment entry on March 12, 1991, in which it granted the summary judgments sought by the commissioners, the engineer, and the

---

1. Other parties were also named as defendants in the amended complaint, but we do not discuss them in our decision because they were subsequently dismissed from the case and are not parties to this appeal.

trustees against appellants. The trial court denied appellants' motion for partial summary judgment. Finally, the trial court granted the commissioners, the engineer, and the trustees summary judgment against the driver on her cross-claims.

This court affirmed in part and reversed in part the March 12, 1991 ruling of the trial court. *Franks v. Sandusky Twp. Bd. of Trustees* (Mar. 31, 1992), Sandusky App. No. S–91–18, unreported, 1992 WL 66561. This court found that the engineer was entitled to summary judgment on appellants' claims, but that questions of fact remained regarding whether the trustees were liable for nuisance because of the maintenance of signage at the intersection where the accident occurred (*i.e.*, the sign was not reflectorized and was smaller than regulations required). This court also ruled that the commissioners were not entitled to summary judgment as a matter of law on the issue of whether the county should have installed a guardrail at the curve where the accident occurred (because questions of fact remained regarding whether the wash bank was steep enough to require the guardrail installation). Finally, this court found that the summary judgments granted to the commissioners and to the trustees regarding the driver's cross-claims were in error because the trial court did not address the issue of whether the cross-claims were barred by a statute of limitations and the issue was not moot.

The Supreme Court of Ohio affirmed the decision of this court. *Franks v. Lopez* (1994), 69 Ohio St.3d 345, 351, 632 N.E.2d 502, 506. At the conclusion of its opinion, the Supreme Court stated:

"To summarize, we conclude questions of fact remain as to (1) whether the township breached its duty to keep its roads 'free from nuisance' for its alleged failure to maintain the reflectorized sign and its alleged failure to comply with the manual, and (2) whether the county had a duty to install a guardrail pursuant to R.C. 5591.36. We further find, as a matter of law, that the alleged defective design and construction and the failure to erect proper signage do not constitute a nuisance within the meaning of R.C. 2744.02(B)(3). Therefore, the county and township are immune from suit for these claims. Finally, we note the negligence claims against Lopez and Zavala, as well as the statute of limitations defense asserted against Lopez, are still intact and remain to be resolved by the trial court."

The case was then remanded to the trial court for further proceedings.

On remand, the commissioners and the engineer filed a motion for summary judgment. In support of the motion, they argued that the method employed by appellants' expert witness to measure the angle of the wash bank of the river at the site of the accident was scientifically unreliable, rendering his testimony

inadmissible. They further argued that the only remaining evidence, testimony from their expert witness regarding the angle of the wash bank, showed that the wash bank was not steep enough to require the installation of a guardrail by law.

The trustees filed a motion for summary judgment on the driver's cross-claims. The trustees argued in support of their motion that they had a complete defense to the cross-claims because the statute of limitations on the claims expired before they were filed by the driver. The driver filed a motion in opposition, arguing that the statute of limitations had not run.

Appellants filed a notice of dismissal of their claims against the driver. However, the cross-claims between the driver, the commissioners, the engineer, and the trustees all remained viable.

On January 31, 1996, the trial court filed the judgment entry from which the wrongful death complainants and the driver now appeal. The opening statement of the trial court in the judgment entry was "This cause is before the Court on Amended Motion for Summary Judgment filed by Defendants Sandusky Country [*sic*] Commissioners and Sandusky County Engineer. In consideration thereof, the Court finds that such motion is well taken and that it should be granted." The discussion that follows the opening statement relates solely to the issue of whether or not the testimony of appellants' expert is scientifically reliable, and whether or not a question of fact remains regarding whether the wash bank of the river was steep enough to require the installation of a guardrail by the county at the curve of the road where the accident took place. The trial court concluded that the testimony of appellants' expert was inadmissible and that the remaining evidence presented by the commissioners and the engineer show that the wash bank was not steep enough to require the installation of a guardrail as a matter of law.

The trial court then stated: "Therefore, the Court grants Defendants' motion for summary judgment. Case dismissed[.] Costs to Plaintiff [*sic*]."

The assignments of error presented by appellants for consideration follow.

"Assignment of Error No. 1

"The trial court misapplied *Ohio R. Evid.* 702 to exclude the expert testimony of John Pflum regarding the slope of the washbank because the measurement tool used by Pflum, an inclinometer, is a reliable means of measuring the slope of a wash bank. Rather than provide proof that the inclinometer is unreliable, the different measurements determined by Sandusky County's use of a topographical survey merely raise an issue of fact for the jury.

"Assignment of Error No. 2

"The trial court did not apply the proper law in determining what slope of the wash bank was necessary to create a question of fact for the jury to a [sic] to whether the wash bank is sufficiently close to perpendicular to impose liability on Sandusky County.

"Assignment of Error No. 3

"It is a question of fact for the jury to decide whether the wash bank in question is so steep as to require that Sandusky County install a guardrail. It is not a question for the court.

"Assignment of Error No. 4

"The trial court erroneously dismissed the plaintiffs' claims against the defendant, Sandusky Township.

"Assignment of Error No. 5

"The trial court erroneously dismissed the plaintiffs' claims against Adrian Zavala.

"Assignment of Error No. 6

"The trial court erroneously dismissed the cross–claims of Rhonda Lopez against Sandusky Township and Sandusky County.

"Assignment of Error No. 7

"The trial court erroneously determined that expert testimony was necessary to establish the slope of the wash bank.

"Assignment of Error No. 8

"The trial court committed prejudicial error and abused its discretion when it dismissed plaintiffs' case against the defendant, Sandusky County, solely upon the basis of alleged impropriety of one (1) of plaintiffs' expert witnesses, when plaintiff has other witnesses, expert and lay, who can testify concerning the 'extreme steepness' of the Sandusky River Bank.

"Assignment of Error No. 9

"The court erroneously dismissed the plaintiff [sic] claims against Sandusky County. If it determined that the plaintiff's [sic] expert John Pflum used an incorrect methodology, it should have provided the plaintiff an opportunity to reexamine the wash bank utilizing a different methodology."

The assignments of error presented by the driver for consideration follow.

"First Assignment of Error:

"The Trial Court Erred in Granting Summary Judgment for the Sandusky County Commissioners on Rhonda Lopez's Cross–Claims.

"Second Assignment of Error:

"The Trial Court Erred in Dismissing Rhonda Lopez's Cross–Claims against the Sandusky Township Trustees."

We will begin by considering appellants' fourth, fifth and sixth assignments of error and the driver's second assignment of error together, as all relate to the same question. The question common to the above-named assignments of error is: did the trial court err when it dismissed the entire case, including appellants' claims against the township and the boyfriend and cross-claims between the driver, the township, the commissioners, and the engineer when it considered only issues that related to whether or not the commissioners and the engineer owed a duty to install a guardrail at the curve of the road?

The Supreme Court of Ohio considered a case where a trial court granted summary judgment to a nonmoving party and stated:

"Civ.R. 56(C) provides that summary judgment shall be rendered only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321 [15 OBR 448, 474 N.E.2d 271]. Where, as here, the facts are not contested, there is no issue of fact and a settlement of the legal questions will be determinative of the dispute. Cf. *id.* While Civ.R. 56 does not ordinarily authorize courts to enter summary judgment in favor of a non-moving party, *Marshall v. Aaron* (1984), 15 Ohio St.3d 48 [15 OBR 145, 472 N.E.2d 335], syllabus, an entry of summary judgment against the moving party does not prejudice his due process rights where all relevant evidence is before the court, no genuine issue as to any material fact exists, and the non-moving party is entitled to judgment as a matter of law. *Houk v. Ross* (1973), 34 Ohio St.2d 77 [63 O.O.2d 119, 296 N.E.2d 266], paragraph one of the syllabus." *State ex rel. Cuyahoga Cty. Hosp. v. Bur. of Workers' Comp.* (1986), 27 Ohio St.3d 25, 28, 27 OBR 442, 444, 500 N.E.2d 1370, 1373.

As our discussion of the issues and procedure in this case shows, the situation in this case does not meet the factors outlined by the Supreme Court of Ohio that justify the granting of summary judgment to a nonmoving party. For instance, a ruling that the commissioners and the engineer owed no duty to install a guardrail does not, as a matter of fact or of law, resolve the issue of whether the township is liable for failing to maintain a reflectorized sign of the proper size to warn motorists of the curve in the road. Neither does the ruling regarding the lack of a duty to install a guardrail resolve the factual and legal issues attendant to the claim against the boyfriend, who is accused of causing the accident through reckless driving. Accordingly, the trial court erred when it dismissed the entire case after considering and ruling upon the issues relating solely to the amended motion for summary judgment filed by the commissioners and the engineer. To

the extent that they challenge the dismissal of all of the remaining viable claims against the township and the boyfriend, appellants' fourth and fifth assignments of error are well taken. To the extent that they challenge the dismissal of any remaining cross-claims between the township and the driver, appellants' sixth and the driver's second assignments of error are well taken.

Our rulings on appellants' fourth, fifth and sixth assignments of error and on the driver's second assignment of error create a procedural posture in this case that prevents us from addressing the issues raised in the remaining assignments of error without some indication from the trial court that it intended to allow a separate appeal of the ruling on the claims the various parties brought against the commissioners and the engineer. Ohio courts have long recognized that a trial court may employ a *nunc pro tunc* order to indicate that there is no just reason for delay of an appeal of a decision that disposes of all of the claims relating to one of several parties in a case. See, *e.g., Korodi v. Minot* (1987), 40 Ohio App.3d 1, 3, 531 N.E.2d 318, 320–321; *Hughes v. Miner* (1984), 15 Ohio App.3d 141, 143, 15 OBR 233, 234–235, 473 N.E.2d 53, 55–56. Accordingly, we remand this case to the trial court for twenty days from the date of this decision to permit the trial court to include Civ.R. 54(B) language by *nunc pro tunc* entry if the trial court did originally intend to permit this court to consider its ruling on the claims that relate solely to the commissioners and the engineer. If a *nunc pro tunc* entry is filed by the trial court within the allotted time, the clerk of the Sandusky County Court of Common Pleas shall notify this court that the judgment was entered and this case will be reinstated to this court's docket. This court will then consider the assignments of error presented by appellants and the driver that relate to the trial court's ruling on the amended motion for summary judgment that was filed by the commissioners and the engineer. However, if no *nunc pro tunc* entry is entered within the allotted time, the appeal on the remaining issues will be dismissed *sua sponte* and this court will not address the remaining assignments of error, as any discussion of the issues raised in the assignments would be advisory and premature.

*Cause remanded.*

HANDWORK, GLASSER and SHERCK, JJ., concur.