OPINION
Plaintiff-appellant, Beverlyn Jones, appeals a decision of the Butler County Court of Common Pleas granting the motions of defendant-appellee, Armco, Inc. ("Armco"), to exclude expert testimony and for summary judgment in appellant's workers' compensation claim.
Appellant suffered an injury arising out of her employment with Armco on April 17, 1989. She filed an Ohio Workers' Compensation claim for injuries described as "contusion, top of head," "minor concussion" and "cervical strain." Almost three years later, on January 3, 1992, appellant filed a motion to add "fibromyalgia" as an additional allowed condition. Fibromyalgia is a musculoskeletal pain and fatigue disorder characterized by "trigger points" at designated locations throughout the body. Appellant subsequently amended the motion to include "gastritis," which she claimed was caused by the medications she was taking to treat her fibromyalgia.
The Industrial Commission denied appellant's claim and she appealed the decision to the Butler County Court of Common Pleas pursuant to R.C.4123.512. Appellant voluntarily dismissed her first appeal without prejudice. On August 17, 1998, she filed a second notice of appeal and complaint to reactivate the appeal pursuant to R.C. 2305.19.
Depositions of several physicians were taken by the parties as part of discovery. Dr. Mark Frazer, appellant's treating physician, testified in a deposition that in his opinion appellant suffered from fibromyalgia. He concluded that appellant's April 1989 accident was the direct cause of appellant's disease. On July 31, 2000, appellee filed a motion in limine
to exclude the testimony of Dr. Frazer. Appellee also moved for summary judgment on the basis that without Dr. Frazer's testimony there was no evidence that the April 1989 accident was the direct cause of appellant's fibromyalgia. On November 28, 2000, the trial court sustained both motions.
Appellant now appeals the trial court's decision to grant both motions and raises the following two assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN SUSTAINING DEFENDANT-APPELLEE ARMCO'S MOTION FOR SUMMARY JUDGMENT UNDER CIVIL RULE 56(C) BY FAILING TO CONSTRUE THE EVIDENCE MOST FAVORABLY TOWARD PLAINTIFFS-APPELLANTS JONES', WHERE HER TREATING PHYSICIAN TESTIFIED THAT HER INDUSTRIAL INJURY OF APRIL 17, 1989 WAS THE DIRECT CAUSE OF HER FIBROMYALGIA. [sic]
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN SUSTAINING DEFENDANT-APPELLEE ARMCO'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF PLAINTIFF-APPELLANT JONES' TREATING PHYSICIAN, IN THE PERFORMANCE OF ITS DE MINIMUS GATEKEEPER FUNCTION UNDER OHIO RULE OF EVIDENCE 702, THAT HER INDUSTRIAL INJURY OF APRIL 17, 1989 WAS THE DIRECT CAUSE OF HER FIBROMYALGIA WHERE HIS OPINION WAS BASED ON HIS TREATMENT OF HER BOTH BEFORE AND AFTER THE INDUSTRIAL INJURY AND SUPPORTED BY RELEVANT PEER REVIEWED PROFESSIONAL MEDICAL LITERATURE.
We begin by addressing appellant's second assignment of error in which she argues that the trial court erred in granting the motion in limine to exclude Dr. Frazer's testimony. As an initial matter, we note that "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. The judgment of the trial court will not be reversed on appeal absent an abuse of discretion. Id. An abuse of discretion connotes more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
Evid.R. 702 governs the admission of expert testimony. This rule provides that a witness may testify as an expert if all of the following apply:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons.
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony.
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information.
The debate in this case centers on the third requirement of admissibility: whether the testimony is based on reliable scientific, technical or other information. Evid.R. 702 was amended in 1994 to specifically include reliability as a prerequisite to the admission of expert testimony. State v. Nemeth (1998), 82 Ohio St.3d 202, 210. In Nemeth, the Ohio Supreme Court indicated that in State v. Pierce
(1992), 64 Ohio St.3d 490, it had held that reliability was not an issue to be considered in determining admissibility. Id. The court continued by finding that since Pierce, Evid.R. 702 had been amended, "specifically adding the requirement that the information forming the basis of expert testimony be `reliable.'" Id.
The rule does not define "reliability" in this context. The Staff Notes to Evid.R. 702 indicate that the amended rule "does not attempt to define the standard of reliability, but leaves that to further development through case law." Evid.R. 702, July 1, 1994 Staff Note;Nemeth, 82 Ohio St.3d at 208. In Miller Bike Athletic Co. (1998),80 Ohio St.3d 607, the Ohio Supreme Court adopted the four factors articulated by the United States Supreme Court in Daubert v. Merrell DowPharmaceuticals, Inc. (1993), 509 U.S. 579, 113 S.Ct. 2786, to be considered when evaluating the reliability of expert testimony based on scientific evidence. The four factors are: (1) whether the theory or technique has been tested; (2) whether it has been subjected to peer review; (3) whether there is a known potential rate of error; and (4) whether the methodology has gained general acceptance. Id.
"Relevant evidence based on valid principles will satisfy the threshold reliability standard for the admission of expert testimony." Nemeth,82 Ohio St.3d at 211. "[Q]uestions of reliability are to be directed at principles and methods used by an expert in reaching his or her conclusions, rather than trying to determine whether the conclusions themselves are reliable." Nemeth, 82 Ohio St.3d at 210.
Appellant contends that Dr. Frazer's testimony was based on his treatment of appellant and was supported by the "relevant peer-reviewed professional medical literature." Dr. Frazer testified that he is a family practitioner in Middletown, Ohio and that his first contact with appellant was in October 1989, when she was seen for a follow-up of her work injury. In 1990, he diagnosed appellant with fibromyalgia and attributed the disease to appellant's 1989 workplace accident. He indicated that his opinion that the accident caused fibromyalgia was based on eleven years of treatment with appellant and that she has the criteria that the medical community uses to evaluate the existence of the disease. When questioned to explain the process by which a blow to the head can cause trigger points in other parts of the body, Dr. Frazer stated that he cannot explain the process. He stated that he is not aware of any studies that substantiate the biological process that causes fibromyalgia to develop after a trauma.
Dr. Frazer admitted that the diagnosis of fibromyalgia itself was much-debated in the medical community and that the diagnosis was not recognized by the American Academy of Rheumatology and Arthritises until very recently. He stated that although it is now an accepted diagnosis, the causes of the disease are debated. He indicated that his view that fibromyalgia can be caused by injury was based on clinical experience, that he does not have experiments or studies to support his belief, and he could not give the name of a single study that supports his finding that fibromyalgia can be caused by a traumatic event. Dr. Frazer testified that he was unaware of an article from the Journal of Rheumatology entitled "The Fibromyalgia Syndrome: A Consensus Report on Fibromyalgia and Disability" ("the Vancouver report") which takes the position that the term "posttraumatic fibromyalgia" should be eliminated. The article states that medical evidence on the theory that trauma can cause fibromyalgia is insufficient to establish causal relationships.
Dr. Frazer referred appellant to a specialist, Dr. Muzzarelli, who testified that the cause of fibromyalgia is unknown. Dr. Muzzarelli stated that appropriate studies have not been performed on the theory that fibromyalgia can be caused by trauma and that no scientific evidence confirms that trauma can cause fibromyalgia. He indicated that it is impossible to say with any degree of medical certainty whether the accident caused fibromyalgia because of the lack of scientific evidence.
As mentioned above, the issue in this case is the reliability of Dr. Frazer's statement that appellant's fibromyalgia was caused by the trauma of her workplace injury. As instructed by the Ohio Supreme Court inMiller, we begin our analysis by considering the factors outlined inDaubert to determine reliability. First, we consider whether the theory or technique has been tested. Dr. Frazer could not identify the biological process that causes fibromyalgia to develop after a trauma and there has been no testing of the theory.
Second, the evidence before the trial court established that the theory that trauma causes fibromyalgia has been subject to peer review, and that the theory has been rejected because the findings are insufficient to substantiate causation.[1] Third, there is no known rate of error since the theory has not been tested.
Finally, although not determinative of the question of reliability, seeNemeth, 82 Ohio St.3d at 210, we consider whether the theory is generally accepted within the relevant scientific community.[2] The medical journal report and the testimony of both Dr. Frazer and Muzzarelli establish that the theory is not generally accepted within the medical community.
We also note that although the Daubert factors may aid in determining reliability, the inquiry is flexible. Miller at 612. The factors are not an exhaustive list and the court can consider other indicia of reliability in its consideration of whether an expert's opinion is based on reliable scientific or technical information. See Kuhmo Tire Co.,Ltd. v. Carmichael (1999), 526 U.S. 137, 150-51, 119 S.Ct. 1167, 1175. However, there is no other evidence in the record that would support the reliability of Dr. Frazer's theory of causation.
An expert witness' knowledge cannot be based on subjective belief or unsupported speculation. State v. Hurst (Mar. 7, 2000), Franklin App. No. 98AP-1549, unreported, 2000 WL at *9. Instead, "the knowledge must apply to a `body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds.'" Id., quoting Daubert,509 U.S. 579, 590, 113 S.Ct. 2786. Thus, we find that the trial court did not abuse its discretion in determining that Dr. Frazer's testimony that appellant's fibromyalgia was caused by her workplace accident was not sufficiently reliable as required by Evid.R. 702.
Appellant contends that the trial court's "gatekeeper" function created by Daubert to insure a threshold of reliability for expert opinion testimony has been expanded by federal courts into a highly restrictive standard. She argues that this standard attempts to make the gatekeeper a junior expert who passes on the substance of the opinion of a professional expert by making a de facto credibility determination. Appellant contends that Ohio courts have adopted a "de minimus gatekeeper" standard in which the trial judge does not evaluate the conclusions and inferences in the experts' opinion. Appellant contends because the Ohio standard differs from the federal standard, the trial court erred in relying heavily on Black v. Food Lion, Inc. (C.A.5, 1999), 171 F.3d 308, a federal case which addressed the issue of whether a treating physician could testify that a fall caused fibromyalgia.[3]
Our analysis above focuses on Ohio law regarding admissibility of evidence under Evid.R. 702. As mentioned above, the drafters of the revised rule left Ohio's standard of reliability to be further developed by case law. Although the Ohio Supreme Court has only addressed this issue in two cases, it is clear that pursuant to the court's decisions inMiller and Nemeth, this inquiry involves consideration of the Daubert
factors. Although appellant argues that Ohio's standard is much lower than the federal standard, the Ohio Supreme Court has determined that at least some indicia of reliability is required before admitting expert testimony.
The facts of the case before us present no evidence to support the reliability of Dr. Frazer's opinion. Dr. Frazer is clearly qualified to testify as an expert because of his medical knowledge. He is also qualified to discuss the diagnosis of fibromyalgia as he described the criteria that the medical community uses to evaluate the existence of the disease. However, on the issue of his theory that appellant's fibromyalgia was caused by her accident, Dr. Frazer was unable to state any reliable scientific or other basis for his opinion. Thus, if there is any difference between the federal standard and Ohio's standard, it is irrelevant under the facts of this case. Appellant's second assignment of error is overruled.
In her first assignment of error, appellant argues that the trial court erred by granting summary judgment to appellee. Summary judgment is appropriate pursuant to Civ.R. 56(C) when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66. The party seeking summary judgment bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact as to the essential elements of the nonmoving party's claim. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. "[I]f the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate shall be entered against the nonmoving party." Id. Our standard of review on summary judgment is de novo. Jones v. Shelly Co. (1995),106 Ohio App.3d 440.
Appellant argues that the trial court erred in granting summary judgment in favor of appellee. Appellant argues that the trial court should not consider the issue of credibility of experts on summary judgment and that The Vancouver Report should have been disregarded in construing the evidence most favorably toward appellant, because it went to the weight of Dr. Frazer's opinion, not admissibility.
However, the trial court correctly considered the issue of admissibility of Dr. Frazer's opinion before determining whether to grant summary judgment. In determining a motion for summary judgment, a court can only consider evidence which would be admissible at trial. Civ.R. 56(E). "Although reliability generally goes to the weight of expert testimony rather than to its admissibility, the threshold criteria for the admissibility of reliable expert testimony [are] set forth in Evid.R. 702(C)." Franks v. Lopez (1997), 121 Ohio App.3d 523, 529. Once that threshold of reliability is met, then any remaining issues of credibility remain for the trier of fact. See Nemeth,82 Ohio St.3d at 210; State v. Rangel (2000), 140 Ohio App.3d 291, 296. As discussed above, Dr. Frazer's opinion on causation did not meet that threshold requirement of reliability. As such, his opinion was inadmissible and could not be considered by the trial court on the motion for summary judgment.
Appellant cannot establish a prima facie case without competent medical testimony to establish proximate causation between her injury and her medical condition. Fox v. Indus. Comm. (1955), 162 Ohio St. 569. Thus, the trial court did not err in granting summary judgment in favor of appellee. Appellant's first assignment of error is overruled.
Judgment affirmed.
VALEN and WALSH, JJ., concur.
[1] We note that appellant has attached two medical journal articles to his reply brief. These articles discuss the causality of fibromyalgia and the increased rates of fibromyalgia following cervical spine injury. We find no evidence in the record that indicates these articles were submitted to the trial court for consideration. Thus, they cannot be considered on appeal.
[2] Prior to Daubert, the Federal standard for admissibility of expert testimony was whether it was generally accepted within the relevant scientific community. See Frye v. United States (C.A.D.C. 1923), 2293 F.3d 1013. The Frye test was explicitly rejected by the Ohio Supreme Court in State v. Williams (1983), 4 Ohio St.3d 53, in favor of a relevancy standard. See, also, State v. Pierce (1992),64 Ohio St.3d 490.
[3] In Black v. Food Lion, a physician testified that she determined that trauma was the cause of the plaintiff's fibromyalgia by ruling out any other possible causes for the disease. The Fifth Circuit held that "use of a general methodology can not vindicate a conclusion for which there is no underlying medical support." Food Lion,171 F.3d at 314.