**Motorists Mutual Insurance Co. v. Rockwell**
*[Cite as 6 AOA 49]*

*Case No. 5-88-10*
*Hancock County, (3rd)*
*Decided August 16, 1990*

*Harold M. Hanna, 700 North Main Street, Bowling Green, Ohio 43402 for Intervenor-Plaintiff Cross-Appellant.*

*Donald J. Rassmussen, 215 West Main Cross Street, Findlay, Ohio 45840 for Defendants-Appellants Cross-Appellees.*

*William H. Kies, Jr., 75 Public Square #600 Cleveland, Ohio 44113-2001 for Plaintiff.*

SHAW, P.J.

This is an appeal from a judgment entered in the Court of Common Pleas of Hancock County directing verdicts in favor of both the plaintiffs and the defendants in a negligence action.

The parties to this action, in the trial court, were plaintiffs, Steven Walton and his insurer, Motorists Mutual Insurance Company, and defendants, Howard Rockwell and Lorraine Rockwell.

In September 1985, on State Route 613 in Washington Township, an eastbound automobile operated by Steven Walton collided with a westbound automobile operated by Howard M. Rockwell. As a result of the automobile accident, both parties received extensive physical injuries.

Subsequently, Motorists Mutual Insurance Company brought suit against Howard Rockwell based upon the insurance company's claim of subrogation of the rights of its insured, Plaintiff Steven Walton. Defendant Rockwell answered and asserted that any injuries suffered by Walton were the result of his own negligence in causing the accident.

The trial court allowed Steven Walton to intervene in the action and assert his individual personal injury claim against Rockwell. Subsequently, Rockwell amended his answer to include a counterclaim for damages suffered as a result of Walton's alleged negligence. In addition, the trial court allowed Rockwell's wife, Lorraine Rockwell to intervene and assert a counterclaim against Walton for loss of consortium.

In February 1988, a jury trial commenced in the matter. Upon conclusion of plaintiffs' case, defendants moved for a directed verdict requesting that the trial court direct the jury to find Walton negligent in the operation of his automobile and to further find that Walton's negligence was a proximate cause of the accident. The trial court reserved its ruling on defendants' motion.

Upon the close of all evidence in the case, defendants renewed their motion for directed verdict and plaintiffs moved for directed verdict stating grounds converse to those raised by defendants' motion. Subsequently, the trial court entered judgment directing verdicts for both the plaintiffs and the defendants. Specifically, the trial court found that Walton and Rockwell were each negligent in the operation of their respective vehicles on the date of the accident. The court further found that the negligence of each party contributed at least 51% toward their respective individual injuries. Hence, the trial court dismissed both the complaint and the counterclaim and allowed neither party's claim for damages.

Subsequently, plaintiffs and defendants filed requests for reconsideration. In addition, defendants moved for judgment notwithstanding the verdict and for a new trial. The trial court overruled all post-judgment motions filed by the parties.

Defendants appeal from the judgment of the trial court and assert four assignments of error. Plaintiff, Steven Walton, cross-appeals and asserts five assignments of error. Plaintiff, Motorists Mutual Insurance Company, did not file a notice of appeal from the judgment. Plaintiff's first four assignments on cross-appeal are either identical or extremely similar to defendants' assignments on appeal. Therefore, we will consider these assignments together in the order in which they were raised.

The first assignments of error are that:

"THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT USURPED THE JURY'S FUNCTION AND ASSESSED THE PERCENTAGE OF NEGLIGENCE TO THE RESPECTIVE PARTIES."

R.C. 2315.19, Ohio's comparative negligence statute, provides at subsection (B)(2) that:

"(B) In any negligence action in which contributory negligence is asserted as a defense, the court in a non-jury trial shall make findings of fact, and *the jury in a jury trial shall return a general verdict accompanied by answers to interrogatories, that shall specify*:

"(1) * * *

"(2) The percentage of negligence that directly and proximately caused the injury, in relation to one hundred percent, that is attributable to each party to the action." (Emphasis added.)

The parties contend that, while it may have been appropriate for the trial court to direct verdicts finding that each driver negligently operated his respective vehicle, the specific language of R.C. 2315.19(B) (2) requires that the issue of percentages of negligence be submitted to the jury in a jury trial and therefore the trial court was precluded from directing verdicts on that issue.

Civ. R. 50(A) (4) provides the standard for a decision on a motion for directed verdict as follows:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

The inquiry to be made by the trial court in ruling on a motion for a directed verdict and on a motion for summary judgment are the same. *Hinkle v. Cornwell Quality Tool Co.* (1987), 40 Ohio App. 3d 162. We have previously determined that:

"[S]ummary judgment is properly granted in favor of the defendant in a comparative negligence case where, pursuant to the criteria of Civ. R. 56(C), the court can make any *one* of the following determinations *as a matter of law: either*, (1) the defendant was not negligent; or (2) the defendant's negligence, if any, was not the proximate cause of plaintiff's injury (such as where the plaintiff's own negligence was the *sole* proximate cause of the injury) or (3) the plaintiff's own negligence, (considering factors of assumption of the risk, if any,) outweighed any negligence of the defendant under R.C. 2315.19" *Mowery v. McCracken* (Aug. 31, 1987), Hancock App. No. 5-85-33, unreported at p. 7.

We also note the case of *Junge v. Brothers* (1985), 16 Ohio St. 3d 1, 4 where the Supreme Court of Ohio, in addressing the issue of whether the trial court could determine as a matter of law that the negligence of the plaintiff exceeded the negligence of the defendants, stated that "[a]lthough circumstances could arise under which a directed verdict would be appropriate in a comparative negligence situation, the facts of the case at bar are irreconcilable with that conclusion."

Thus, pursuant to the Court's reasoning in *Junge, supra* and our own conclusions in *Mowery, supra*, in an appropriate case, where the determination can be made *as a matter of law*, we believe an apportionment of fault could be made by the trial court upon motion for a directed verdict. However, in the case presently before the court, we are unable to conclude that reasonable minds could come to but one conclusion regarding the relative fault of the parties in causing the injuries complained of.

The undisputed evidence is that plaintiff Steven Walton was traveling eastbound on State Route 613, which is a two lane highway. Defendant Howard Rockwell was traveling westbound on State Route 613 and attempted to make a left turn from his lane of travel, into the driveway of Scheeter's Market, which involved crossing the eastbound lane of travel. Rockwell had begun his left turn and had entered Walton's lane of travel when the automobile operated by Walton collided with Rockwell's vehicle.

Rockwell testified that, in preparation for his turn into Scheeter's Market, he came to a complete stop in the westbound lane of State Route 613. Rockwell looked eastbound and saw a vehicle, which was Walton's car. Rockwell then looked into the parking lot and driveway area of the market and based upon his perception that the driveway of the market was unobstructed, Rockwell proceeded to make a left turn into the driveway. Although Rockwell had observed plaintiff's approaching vehicle, the defendant testified that, after checking the driveway, he proceeded to cross the eastbound lane without once again checking oncoming traffic.

Walton testified that, since the occasion of the accident, he has been unable to recall any details of the circumstances immediately preceding the collision. However, plaintiff presented testimony of an expert witness, who testified that prior to impact, Walton operated his automobile at an estimated speed of 77-103 miles per hour. Despite Walton's excessive speed in a 55 mph zone, plaintiff's expert testified to the effect that the accident could have been avoided had Rockwell waited for Walton to clear the eastbound lane or if Rockwell had made the left turn with increased speed.

The defendant also presented the testimony of an expert witness who testified that prior to impact, Walton operated his automobile at an estimated speed of 91-93 miles per hour. Contrary to the testimony of plaintiff's witness, the testimony of the defense expert attributed the

collision primarily to Walton's excessive rate of speed.

The testimony of the experts in this case must be considered in light of the testimony of two eyewitnesses to the accident and the testimony of the responding officer at the scene of the accident, who also conducted a subsequent investigation of the circumstances surrounding the collision. We have reviewed the testimony of these witnesses and note serious discrepancies between their respective written statements, their deposition testimony and their in-court testimony. Of particular relevance is the fact that these discrepancies involve the conduct of Rockwell in either waiting for too long a period in the westbound lane before initiating the left turn, or that he possibly hesitated in the eastbound lane once the turn was initiated, or that he reversed his vehicle after proceeding across the eastbound lane.

Upon consideration of the evidence, we find that, in this case, the apportionment of fault involved weighing the evidence, including the credibility of the witnesses. We conclude that, under these circumstances, reasonable minds could reach different conclusions as to the relative fault of the parties to the action. Hence, this issue should have been submitted to the jury. Accordingly, defendants' first assignment of error and plaintiff's first assignment of error are well taken.

The second assignments of error are that:

"THE TRIAL COURT, HAVING FOUND NEGLIGENCE ON THE PART OF BOTH PARTIES, COMMITTED PREJUDICIAL ERROR UNDER THE COMPARATIVE NEGLIGENCE STATUTE, R.C. 2315.19, WHEN IT ENTERED JUDGMENT BOTH AGAINST PLAINTIFFS AND DEFENDANTS."

On the complaint, the trial court found plaintiff Walton to have been 51% negligent in causing his injuries and defendant Rockwell to have been 49% negligent. Therefore, the trial court found that plaintiff's contributory negligence barred recovery for his injuries as alleged in his complaint. Conversely, on the counterclaim, the trial court found Rockwell to have been 51% negligent in causing his injuries and Walton to have been 49% negligent. Hence, the trial court found that Rockwell's contributory negligence barred recovery for his injuries as alleged in his counterclaim.

Plaintiff and defendants now argue that the trial court erred in allocating 51% negligence to each party when the language of R.C. 2315.19(B)

(2) requires that the percentage of negligence of each party be determined "in relation to one hundred percent". Thus, the issue presented is whether, as a matter of law, the statute precludes an allocation of negligence, in excess of 100%, where contributory negligence is asserted as an affirmative defense to the complaint, as well as an affirmative defense to the counterclaim, arising from the same accident.

However, in view of our determination, under the first assignments of error, that any allocation of fault by the trial court, in this case, was an invasion of the province of the jury, we now decline to reach any abstract conclusions as to whether the trial court's allocation, as a matter of law, was consistent with the language of R.C. 2315.19(B) (2). Therefore, to the extent that any allocation of fault by the trial court, under the evidence presented, was an usurpation of the function of the jury and, to that extent only, the parties' second assignments of error are well taken.

Defendants' third assignment of error on appeal is that:

"THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT DENIED DEFENDANTS' MOTION TO RECONSIDER, TO ENTER JUDGMENT NOTWITHSTANDING THE VERDICT AND FOR A NEW TRIAL."

Plaintiff's third assignment of error on cross appeal is that:

"THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT DENIED PLAINTIFF'S REQUEST FOR RECONSIDERATION OF JUDGMENT."

The question of a motion for reconsideration as a vehicle for relief after final judgment is addressed in *Pitts v. Dept. of Transportation* (1981), 67 Ohio St. 2d 378, paragraph one of the syllabus as follows:

"The Ohio Rules of Civil Procedure do not prescribe motions for reconsideration after a final judgment in the trial court."

The court further stated that "[w]ithout a specific prescription in the Civil Rules for a motion for reconsideration, it must be considered a nullity." *Id.* at 380.

Upon the authority of *Pitts, supra,* plaintiff's third assignment of error is not well taken. Likewise we find defendants' argument regarding the purported error of the trial court in overruling their motion for reconsideration to be without merit.

As for defendants' motion for judgment notwithstanding the verdict,' we conclude that the motion was properly denied. The test applicable to a judgment notwithstanding the verdict is the same test applicable to a motion for directed verdict. *Cardinal v. Family Foot Care Centers, Inc.* (1987), 40 Ohio App. 3d 181. Thus, where (as in this case) there is substantial evidence to support the plaintiff's position, upon which reasonable minds can differ, the trial court did not err in denying the motion for judgment in favor of defendants.

However, in accordance with our conclusions reached under the first assignments of error, that the trial court improperly directed verdicts in this case, we find that the trial court also erred in failing to grant defendants' motion for a new trial. To that extent, defendants' third assignment of error is well taken.

For their fourth assignment of error, defendants allege that:

"THE TRIAL COURT COMMITTED PREJU-DICIAL ERROR WHEN IT IMPROPERLY DIRECTED A VERDICT FOR THE PLAINTIFFS AND AGAINST DEFENDANTS."

Similarly, for his fourth assignment of error, plaintiff alleges that:

"THE TRIAL COURT COMMITTED PREJU-DICIAL ERROR WHEN IT IMPROPERLY DIRECTED A VERDICT FOR THE DEFENDANTS AGAINST THE PLAINTIFF."

In consideration of our conclusion under the first assignments that reasonable minds could differ as to the relative degree of fault of the parties, the fourth assignments of error raised by plaintiff and defendants are well taken.

Finally, for his fifth assignment of error, plaintiff alleges that:

"THE TRIAL COURT COMMITTED PREJU-DICIAL ERROR IN PROHIBITING TESTIMO-NY PERTAINING TO THE DEFENDANT'S CONSUMPTION OF ALCOHOL IMMEDI-ATELY PRIOR TO THE VEHICULAR ACCI-DENT HEREIN AND FURTHER ERRED IN PROHIBITING CROSS-EXAMINATION OF THE DEFENDANT WITH REGARD THERE-TO IN ORDER TO IMPEACH HIS TESTIMONY AND CREDIBILITY."

Prior to the trial in this matter, defendants filed a motion *in limine* to exclude evidence of Howard Rockwell's consumption of alcohol on the day of the accident. The trial court initially sustained the motion and subsequently, upon plaintiffs' proffer of the excluded evidence, reaf-firmed its conclusion that evidence of Rockwell's alcohol consumption was inadmissible. Pursuant to Evid. R. 403(A), "[a]lthough relevant, evidence is not admissible if its probative value is substan-tially outweighed by the danger of unfair preju-dice, of confusion of the issues, or of misleading the jury."

We have reviewed the proffer of evidence made by plaintiff regarding defendant's con-sumption of alcohol on the day of the accident. The proffer showed that the testimony of nurses at the hospital where Rockwell received treat-ment after the accident would have been that Rockwell smelled of alcohol upon his arrival at the hospital and continued to smell of alcohol approximately five hours later. There was also a proffer that some of these same nurses and an attending physician would testify of their knowl-edge that Rockwell suffered from chronic alcohol-ism and that he consumed alcoholic beverages on a daily basis.

However, there is a glaring absence of a proffer of any scientific evidence to establish the defendant's blood alcohol concentration at the time of the accident and the expert testimony necessary to establish the significance thereof. See *Parton v. Weilnau* (1959), 169 Ohio St. 145. See also, *State v. Scheurell* (1986), 33 Ohio App. 3d 217.

We therefore conclude that the trial court could properly find that the probative value of the proffered evidence was outweighed by the danger of unfair prejudice. Accordingly, plain-tiff's fifth assignment of error is not well taken.

For the reasons set forth in the foregoing assignments of error, the judgment of the Court of Common Pleas of Hancock County is reversed and the cause is remanded to that court for a new trial.

*Judgment reversed and*
*cause remanded.*

BRYANT and MILLER, JJ., concur.