These are two appeals, consolidated for purposes of appeal, from judgments of the Court of Common Pleas of Tuscarawas County, Ohio. Case No. 1998AP090107 is brought by defendants David and Karen Smith, and challenges the court's judgment entered on a jury verdict in the amount of $320,000. The Smiths assign four errors to the trial court:
ASSIGNMENTS OF ERROR
 1. THE TRIAL COURT ERRED IN PERMITTING ROBERT KOLOPUS, P.E. TO PRESENT EXPERT TESTIMONY.
 2. THE TRIAL COURT ERRED IN DENYING THE MOTION FOR DIRECTED VERDICT OF THE DEFENDANTS-APPELLANTS.
 3. THE TRIAL COURT ERRED IN FAILING TO GIVE CERTAIN PROPOSED JURY INSTRUCTIONS ON THE LAW OF NEGLIGENCE.
 4. THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Plaintiff Brian Renicker, Sr., as father and next friend of Brian Renicker, Jr., a minor, assigns three cross-assignments of error:
CROSS ASSIGNMENTS OF ERROR
 ASSIGNMENT OF ERROR NO. 1
 THE TRIAL COURT ABUSED ITS DISCRETION IN PRECLUDING, PURSUANT TO THE DEFENDANT'S MOTION IN LIMINE, THE TESTIMONY OF PLAINTIFF'S VOCATIONAL ECONOMIC EXPERT.
 ASSIGNMENT OF ERROR NO. 2
 THE TRIAL COURT ERRED IN FAILING TO GRANT PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY.
 ASSIGNMENT OF ERROR NO. 3
 THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON THE DOCTRINE OF RES IPSA LOQUITUR.
In Case No. 1998AP050087, plaintiff Renicker assigns a single error to the trial court's ruling:
 THE COURT ABUSED ITS DISCRETION IN ITS RULING OF SEPTEMBER 14, 1998.
This case has a long and tortuous history. It arose on or about August 5, 1989, when Brian Renicker, Jr., then eight years old was playing in front of a residence owned by the Smith family and rented to a third party. On that day, part of a brick porch wall attached to the residence collapsed on him, severely injuring Brian's right foot. In spite of extensive medical treatment the tendons in Brian's foot were permanently damaged and Brian requires a brace in order to walk normally. The personal injury action was filed on May 16, 1991. The court originally dismissed the entire action, but later modified its dismissal to dispose of only the cause of action sounding in negligence. The trial court retained the remaining causes of action sounding in nuisance and willful and wanton misconduct. Accordingly, when the matter proceeded to appeal, we found we lacked jurisdiction because there was no final appealable order. The trial court later dismissed Renicker's nuisance claim, and in 1993, granted summary judgment on the issue of willful and wanton misconduct. This made the court's ruling final and appealable under the law controlling at the time. This court reviewed the issues of negligence and nuisance, and in Renicker v. Smith (December 30, 1993), Tuscarawas Appellate No. 93AP060043, unreported, we reversed the trial court and remanded the case back for further proceedings. In May, 1994, the court again granted summary judgment on the issues of nuisance and negligence, but in Renicker v. Smith (December 22, 1994), Tuscarawas App. No. 94AP070042, unreported, this court again reversed the decision of the trial court and remanded the action for further proceedings.
The trial court set the matter for jury trial on December 20, 1995, but in response to adverse evidentiary rulings, Renicker dismissed his complaint and refiled the action. In January, 1997, Smith filed another motion for summary judgment and Renicker filed a cross-motion. The court overruled all motions and the matter proceeded to a jury trial on April 20, 1998. The jury returned a unanimous verdict for the plaintiff in the amount of $320,000. Thereafter, Renicker moved the court for prejudgment interest and to compel discovery of the insurance claim files. After an in camera inspection of the claims file, the court gave a redacted version of Smith's file to Renicker. In September of 1998, the trial court overruled the motion for pre-judgment interest, and the matter came back to this court yet again.
We will address Smith's appeal from the jury verdict first.
 I
In his first assignment of error, Smith argues the trial court erred in permitting Renicker's expert witness to testify. Smith objected, arguing first of all, the expert witness lacked expertise on the subject of mortar and secondly, the witness only saw the accident scene once, some seven years after the fact, and after modifications had been made to the scene. Smith pointed out the expert had performed no tests on the brick or mortar. The expert in question is Robert Kolopus, a licensed civil engineer and a certified building inspector. He was retained by Renicker and gave an opinion based on a reasonable degree of engineering certainty as to what had caused the wall of the brick porch to collapse in 1989. Kolopus also gave an opinion, based upon a reasonable degree of engineering certainty, as to whether the wall had been in an advanced state of disrepair for a significant time prior to its collapse.
Smith cites Evid. R. 702 which provides the foundation for an expert's testimony:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedures, test, or experiment, the testimony is reliable only if all of the following apply:
 (1) The theory upon which the procedures, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 (2) The design of the procedure, test, or experiment reliably implements the theory;
 (3) The particular procedures, test, or experiment was conducted in a way that will yield an accurate result.
Smith argues, very simply, that Renicker failed to lay a foundation for the expert opinion because the witness admitted he was not an expert in mortar, and did not perform any tests on the mortar. Kolopus viewed the accident scene long after it had been altered, and Smith argues at most the expert provided an opinion simply on what the pictures taken immediately after the accident purported to show. Smith urges the jurors could look at the pictures themselves, and Kolopus had no expertise useful in guiding the jury.
Our standard of reviewing a challenge to a court's evidentiary ruling is the abuse of discretion standard, seeMcCubbin v. Michigan Ladder Company (1996), 112 Ohio App.3d 639. The Supreme Court has repeatedly defined the term abuse of discretion as implying the ". . . the court's attitude is unreasonable, arbitrary or unconscionable . . ., see Steiner v.Custer (1940), 137 Ohio St. 448.
Renicker points out Kolopus gave his opinion as to the reason the wall collapsed not based upon his examination of the accident scene but rather on the photographs taken both by Renicker and by Smith's insurance investigator. Renicker argues Kolopus used his expertise to analyze the condition of the wall as shown in the photographs in a way a lay person could not. He testified as to the size of the cement ledge or cap that fell on Brian, the height from which it fell, and the mechanics which caused the collapse of the wall, none of which would be within the knowledge of a lay person. Based upon his expertise, Kolopus concluded the wall must have been in an advanced state of disrepair for an extensive period of time, and this state of disrepair was readily observable.
We find an expert is not required to bolster his testimony with tests or experiments in every case and Kolopus laid sufficient foundation for his testimony. Kolopus provided information to the jury which a lay person would not have. Having reviewed Kolopus' testimony, we conclude the trial court did not abuse its discretion in permitting him to testify as an expert witness.
The first assignment of error is overruled.
 II
Appellant's second assignment of error challenges the court's overruling of its motion for directed verdict made pursuant to Civ. R. 50. The motion for directed verdict argued Renicker had failed to produce evidence on the element of constructive notice of the defect.
Renicker responds Smith failed to preserve this error because he did not renew his motion for directed verdict at the close of evidence. In Chemical Bank of New York v. Neman (1990),52 Ohio St.3d 204, the Ohio Supreme Court reaffirmed the rule that a motion for directed verdict made and overruled at the close of the plaintiff's evidence must be renewed at the close of all evidence in order to preserve the error for appeal. Renicker also argues he did produce extensive evidence that the wall had been in disrepair for a long time, and was readily apparent to the casual observer. Renicker cites us to the photographs offered as exhibits, as well as Kolopus' testimony in that regard.
Addressing this matter solely on its merits, we find there was sufficient evidence presented on the element of constructive notice such that reasonable minds could differ on the issue. A motion for directed verdict requires the same analysis as a motion for summary judgment, see Motorist MutualInsurance Company v. Rockwell (1990), 69 Ohio App.3d 159. A motion for directed verdict will only be successful if the plaintiff has not presented evidence on each element, but if the plaintiff has presented some evidence, the matter should go to the jury, Rayburn v. J.C. Penney Outlet Store (1982), 3 Ohio App.3d 463. A motion for directed verdict should only be sustained where it presents a question of law and not fact. If reasonable minds could differ regarding the facts, the motion must be overruled, Carter-Jones Lumber Company v. Eblen (1958),167 Ohio St. 189.
Addressing the issue to only the merits, we find the trial court did not err in overruling the motion for directed verdict.
 III
In his third assignment of error, appellant argues the trial court should have given his proposed jury instructions regarding negligence. Our standard of reviewing such a claim is to consider the jury charge as a whole, and determine whether the charge given misled the jury in a manner materially affecting the party's substantial rights, Kokitka v. Ford MotorCompany (1995), 73 Ohio St.3d 89. Smith asked the court to charge the jury that the mere fact the accident happened is insufficient evidence of negligence. This is an incomplete statement of Ohio law. Negligence will not be presumed solely from the fact an accident happened, but if there are other facts and circumstances in support of a claim of negligence, then the fact the accident happened must be taken into consideration along with the other facts, see Green v.Castronova (1966), 9 Ohio App.2d 156. We find no error in the jury instructions.
The third assignment of error is overruled.
 IV
In his fourth assignment of error, Smith argues the jury verdict was against the manifest weight of the evidence. A reviewing court may not over turn a jury verdict as being against the manifest weight of the evidence if there is competent and credible evidence going to each of the elements of the cause of action, C.E. Morris Company v. FoleyConstruction Company (1978), 54 Ohio St.2d 279. Again, Smith argues Renicker's evidence on the issue of constructive notice was defective. We have reviewed this issue in II, supra.
We have reviewed the record, and we find Renicker presented evidence on each element of his claim. For this reason we conclude the jury's verdict was not against the manifest weight of the evidence. Accordingly, the court did not err in entering judgment on the verdict.
The fourth assignment of error is overruled.
Because we overrule all of Smith's assignments of error, we find all of the cross-assignments of error are moot, and accordingly, they are each overruled in whole.
We now address Renicker's challenge to the failure to award pre-judgment interest. In overruling Renicker's motion, the trial court found defendants had a good-faith, objective reasonable belief there was no liability in the case, and consequently reasonably did not make a monetary settlement offer until relatively late in the litigation. Renicker asserts the real party in interest is not Smith, the owner of the property, but his insurance company, United Ohio Insurance Company, which insured Smith with a policy limit of $300,000.
Renicker argues the insurance company was aware of the claim in 1989, when the accident occurred. Smith asked the insurance company to contact Renicker's counsel on September 7, 1989. Counsel advised the insurance company if it would not conduct settlement negotiations, he would be forced to file a lawsuit. By December of 1990, the insurer took no action to resolve the claim, except to raise it's reserves from $2,500 to $22,000. Renicker's counsel sent a copy of the complaint to the insurer before it was filed on March 12, 1991, and asked the company to discuss settlement prospects. Smith's insurance file contains a memo dated May 8, 1991, prior to this court's involvement in the action, wherein the insurer expressed the opinion it had a strong legal position but there could be exposure, particularly given the sympathy the jury might feel towards Brian. The writer of the memo suggested a $5,000 to $10,000 offer should be made, but no offer was communicated to Renicker and his counsel. The author of the memo also indicated if the company was unsuccessful in obtaining a summary judgment, it faced a prospect of a "rather large judgment". In May, 1991, the insurance company sent the Smiths a letter advising them the award could exceed the policy limits.
In May, 1992, Renicker made a settlement demand of $270,000. In January, 1994, the insurance company's counsel advised the insurance company it had lost the appeal of the summary judgment. Counsel also suggested the insurance company would lose at trial if held to a negligence or nuisance standard, and given Brian's injuries, the policy limits were in jeopardy. Counsel advised the insurance company the matter either had to be appealed to the Ohio Supreme Court or resolved by settlement, rather than trial. By 1995, defense counsel advised the insurance company the matter would come down to a consideration of damages, because the company had little chance of prevailing on the issue of liability. In spite of Renicker's counsel's repeated request to at least discuss settlement prospects, the insurance company did not reply. In November, 1995, Renicker provided the defense his vocational expert's report, and an updated list of special damages. Noting the lack of response to the prior settlement demands, Renicker's counsel advised that Renicker would seek significant damages and pre-judgment interest. In February, 1997, counsel representing Smith in his individual capacity informed the insurance company's counsel a verdict in excess of policy limits was certainly possible and the insurance company had made no formal offers of settlement. Smith's counsel placed the insurer on notice that Smith expected the case to be settled within the limits of the policy. Finally, on April 3, 1997, the insurance company made an offer of a structured settlement providing Brian $15,000 up front and $75,000 payable through four lump sums over a period of twelve years. Counsel rejected this offer as inadequate and later made a counter offer. The insurance company did prepare other structured settlement proposals, but did not submit them to plaintiff's counsel. In April, 1998, the insurance company's counsel recommended a settlement in the $100,000 to $125,000 range but the insurance company again made no formal offer.
Finally, in April of 1998, with trial looming, Smith's insurance company prepared five structured settlement proposals. The proposal was dated April 17, 1998, although counsel represented to the trial court and to us he did not receive it until later. Renicker's counsel rejected the proposal, and counter offered. His offer was rejected.
R.C. 1343.03 provides for an award of interest on a judgment from the date of injury to the date the negligent party pays the judgment in full, if the court finds the losing party failed to make a good faith effort to settle the case but the prevailing party did not fail to make a good-faith effort. Renicker reminds us pre-judgment interest is not intended to punish the party responsible for the underlying damages, but rather to compensate the injured party. We note at the time of hearing, Brian's injury was nearly ten years old. During the more than nine years since Brian was injured, it appears clear Renicker and his counsel made numerous offers for settlement, and attempted to open settlement negotiations, without any success until the eve of trial.
In Moskovitz v. Mount Sinai Medical Center (1994), 69 Ohio St.3d 638, the Ohio Supreme Court noted it has long been common law in Ohio to award pre-judgment interest, particularly in tort actions. Where compensation for an injury is delayed for a long time an injured party frequently cannot be made whole unless the damages award includes compensation in the form of prejudgment interest, Moskovitz at 656-57. In addition, public policy and the principle of judicial economy require us to encourage good-faith efforts to settle controversies prior to trial, Moskovitz at 658. We have reviewed the record, and we find the trial court erred in finding the defendants made a good-faith effort to settle this claim. Instead we find the manifest weight of the evidence supports a finding of bad-faith, which delayed resolution of this matter unreasonably, over nearly ten years, and required extensive court involvement.
Renicker's assignment of error is sustained.
For the foregoing reasons, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, is affirmed in part and reversed in part. As stated supra, we affirm the entry of judgment on the jury verdict, but reverse and remand on the prejudgment interest issue. Upon remand, the court must compute pre-judgment interest from the time the cause of action accrued on August 5, 1989, at the interest rate provided by statute.
By Gwin, J., Wise, P.J., and Farmer, J., concur.
-----------------------
-----------------------
 ----------------------- JUDGES
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, is affirmed in part and reversed in part, and matter is remanded to the court for further proceedings in accord with law and consistent with this opinion. Costs to appellant.
-----------------------
-----------------------
 ----------------------- JUDGES