DECISION AND JUDGMENT ENTRY
{¶ 1} Cory Williams appeals his conviction for possession of marihuana and contends the court erred by permitting the state's witness to testify as an expert in its identification. Because Detective Rourke has specialized training and experience in the identification of marihuana, the court did not abuse its discretion when it permitted him to testify as an expert. Williams also challenges the admissibility of Rourke's testimony on the basis that it does not meet the reliability threshold of Evid.R. 702(C), pertaining to scientific evidence. While we tend to agree, we find no error because Williams' objection was not specific enough to put the state or the trial court on notice that Rourke's opinion lacked a foundation of reliability. Finally, Williams challenges the sufficiency and weight of the evidence supporting his conviction. He argues there is no evidence that he "possessed" marihuana. Because there is sufficient evidence from which a reasonable trier of fact could conclude Williams had constructive possession of the marihuana, we affirm his conviction.
 {¶ 2} On May 12, 2003, Officer Carla Salisbury sent out a radio call asking an officer to stop a white Land Rover that she believed was involved in a drug related incident. After receiving the call, Captain Roger Moore observed a vehicle matching Officer Salisbury's description. He followed the vehicle until it proceeded into a school zone with a flashing sign indicating school was in progress and the speed limit was 20 mph. Because he paced the vehicle at 25 mph, Captain Moore initiated a traffic stop. Captain Moore identified Williams as the driver of the vehicle. At the time of the traffic stop, Williams also had a passenger in his vehicle.
 {¶ 3} When Captain Moore approached the driver's side of the vehicle, he noticed a very strong odor of burnt marihuana coming from the vehicle. By this time, Officer Salisbury had arrived on the scene and approached the passenger side of the vehicle. She too noticed an odor of burnt marihuana coming from the vehicle. After Captain Moore asked Williams if he would consent to a search of the vehicle, Williams agreed. During the search, Captain Moore discovered marihuana in the center console between the driver and passenger seats. The marihuana was lying on top of a yellow slip of paper that evidenced Williams' ownership of the vehicle. The search also revealed a trace amount of marihuana near the passenger side door. A search of Williams revealed that he did not have marihuana on his person. The officers did, however, find marihuana on the passenger when they searched him.
 {¶ 4} After discovering the marihuana in the vehicle, Captain Moore asked Williams who owned the vehicle. At first, Williams claimed the vehicle belonged to a friend. However, after being confronted with the yellow slip of paper, Williams admitted that he owned the vehicle. Captain Moore then issued Williams a citation for possession of marihuana in an amount less than 100 grams, a minor misdemeanor.
 {¶ 5} At trial, Captain Moore and Officer Salisbury testified about the traffic stop and the search of the vehicle. The state then presented Detective Shawn Rourke, who testified that he has been employed by the Chillicothe Police Department for the past eight years. He testified that two or three years prior he attended a training course provided by the Ohio Peace Officers Training Academy and received certification in the testing and identification of marihuana. According to his testimony, he has analyzed close to 300 samples of marihuana for the Chillicothe Police Department. Detective Rourke indicated that after analyzing and testing the substance seized from Williams' center console, he determined it was marihuana.
 {¶ 6} Following Detective Rourke's testimony, Williams took the stand in his own defense. Williams testified that he did not know there was marihuana in his vehicle. He indicated that he would not have permitted Captain Moore to search his vehicle if he had known there was marihuana in it. Williams also testified that neither he nor his passenger had smoked marihuana in the vehicle. He denied that the vehicle smelled of burnt marihuana.
 {¶ 7} At the close of the evidence, the court entered a finding of guilty on the drug possession charge. The court then fined Williams $100.00 and suspended Williams' driver's license for six months. Williams now appeals and raises the following assignments of error: "ASSIGNMENT OF ERROR NO. 1 — The trial court erred by entering a guilty verdict because the evidence was insufficient to support a finding of guilt beyond a reasonable doubt. ASSIGNMENT OF ERROR NO. 2 — The trial court erred, to the prejudice of appellant, by finding that State's Exhibit B was marijuana."
 {¶ 8} For the sake of clarity, we will address Williams' second assignment of error first. Here, Williams argues the court erred when it permitted Detective Rourke to testify as an expert in marihuana identification.
 {¶ 9} A trial court's decision regarding the admissibility of expert testimony will not be disturbed absent an abuse of discretion. See Miller v. Bike Athletic Co. (1998),80 Ohio St.3d 607, 616, 687 N.E.2d 735, citing Calderon v. Sharkey
(1982), 70 Ohio St.2d 218, 436 N.E.2d 1008; Scott v. Yates
(1994), 71 Ohio St.3d 219, 221, 643 N.E.2d 105. The term "abuse of discretion" connotes more than error of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Wilmington Steel Product, Inc. v. ClevelandElec. Illum. Co. (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622. When applying the abuse of discretion standard of review, we are not free to merely substitute our judgment for that of the trial court. In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 137-38,566 N.E.2d 1181, citing Berk v. Matthews (1990), 53 Ohio St.3d 161,169, 559 N.E.2d 1301.
 {¶ 10} Evid.R. 702 governs the admissibility of expert testimony. The rule states: "A witness may testify as an expert if all of the following apply: (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception among lay persons; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training or education regarding the subject matter of the testimony; (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply: (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles; (2) The design of the procedure, test, or experiment reliably implements the theory; (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result." Evid.R. 702.
 {¶ 11} Williams disputes that Detective Rourke is qualified to testify as an expert in the identification of marihuana. He notes that Detective Rourke is not a chemist and does not have a college degree.
 {¶ 12} Evid.R. 702(B) does not require an individual to have a college degree in order to be qualified as an expert witness. See State v. Mack (1995), 73 Ohio St.3d 502, 511,653 N.E.2d 329. Rather, professional training and experience in a particular field may be sufficient to qualify an individual as an expert.Mack, citing State v. Beuke (1988), 38 Ohio St.3d 29, 43,526 N.E.2d 274. Moreover, an expert witness need not be the best witness on the subject matter as long as the expert aids the trier of fact in the search for the truth. State v. Hartman,93 Ohio St.3d 274, 287, 2001-Ohio-1580, 754 N.E.2d 1150, quotingState v. Tomlin (1992), 63 Ohio St.3d 724, 728,590 N.E.2d 1253; Alexander v. Mt. Carmel Med. Ctr. (1978),56 Ohio St.2d 155, 159, 383 N.E.2d 564.
 {¶ 13} The Supreme Court of Ohio has previously found that a trial court does not abuse its discretion when it permits a police officer with experience in the identification of marihuana to testify as an expert and identify a substance as marihuana based upon the substance's appearance. State v. Maupin (1975),42 Ohio St.2d 473, 330 N.E.2d 708. In Maupin, the testifying officer "had 14 years experience as a member of the vice squad of the Cincinnati Police Department, had one and a half years experience as an undercover agent for the Federal Bureau of Narcotics, had made hundred of arrests, including those for drug violations, and, during the course of drug investigations, he had occasion to see and observe marijuana." Maupin,42 Ohio St.2d 473, paragraph two of the syllabus. Furthermore, other Ohio Appellate Courts have found that a trial court does not abuse its discretion when it permits expert testimony by police officers with training and experience similar to Detective Rourke's. SeeIn the Matter of Shon Smith (March 31, 1982), 3rd Dist. No. 9-81-34 (Officer had attended a special two-day school to aid law enforcement officers in the identification of marihuana and had correctly identified twelve test samples at the school and passed the test.); State v. Dillon (Sept. 21, 1983), 12th Dist. No. CA 796 (Officer had attended a two-day course at the Ohio Peace Officers Training Academy and had correctly identified twelve test samples and passed the test.); State v. Anderson (March 23, 1984), 6th Dist. No. OT-83-27 (Officer had 17 years of police experience, had special training in the field identification of drugs, and had performed hundreds, possibly thousands, of field tests on substances alleged to be marihuana.)
 {¶ 14} The record indicates that Detective Rourke attended a forty-hour training course provided by the Ohio Peace Officers Training Academy approximately two or three years ago and is currently certified in the testing and identification of marihuana. One of his collateral responsibilities at the Chillicothe Police department consists of the analysis of marihuana. In that capacity, he has analyzed close to 300 samples of marihuana. Given his training and experience, we cannot say the court abused its discretion when it determined Detective Rourke was qualified to testify as an expert in the identification of marihuana.
 {¶ 15} Williams takes issue with Detective Rourke's failure to produce a copy of his certificate from the Ohio Peace Officers Training Academy. However, he fails to explain why he believes it is necessary for Detective Rourke to produce a copy of the certificate. It is the existence of the certificate, not its contents that is of concern here. We do not require other expert witnesses to supply documentary proof of their degrees, diplomas, or certifications, and we see no reason to require Detective Rourke to do so. Detective Rourke's testimony that he is certified is sufficient if the trial court finds it to be credible.
 {¶ 16} Williams also takes issue with the fact that Detective Rourke's certification does not expire. Perhaps this would be relevant if the procedures for testing marihuana had undergone a substantial and significant change since Detective Rourke had received his certification. However, Williams does not allege that such a change has occurred. According to the record, Detective Rourke currently possesses specialized knowledge, training, and experience in the identification of marihuana. Thus, the court did not abuse its discretion in determining that he was qualified to testify as an expert.
 {¶ 17} Finally, Williams challenges the reliability of Detective Rourke's testimony under Evid.R. 702(C). Specifically, he contends Detective Rourke failed to establish the reliability of his analysis and testing.
 {¶ 18} Evid.R. 702(C) establishes a threshold standard of reliability that a proponent must meet before an expert's opinion is admissible. See Evid.R. 702, July 1, 1994 Staff Note; See, also, State v. Nemeth, 82 Ohio St.3d 202, 212, 1998-Ohio-376,694 N.E.2d 1332; Franks v. Lopez (1997), 121 Ohio App.3d 523,528, 700 N.E.2d 385. When determining whether an expert's opinion is reliable under Evid.R. 702(C), the inquiry "focuses on whether the opinion is based upon scientifically valid principles, not whether the expert's conclusions are correct * * *." Miller v.Bike Athletic Co., 80 Ohio St.3d 607, 1998-Ohio-178,687 N.E.2d 735, paragraph one of the syllabus. "To determine reliability, * * * a court must assess whether the reasoning or methodology underlying the testimony is scientifically valid." Id. at 611, citing Daubert v. Merell Dow Pharmaceuticals, Inc. (1993),509 U.S. 579, 592-92, 113 S.Ct. 2786, 125 L.Ed.2d 469.
 {¶ 19} Our review of the record confirms that Detective Rourke failed to explain his analysis and testing. On direct examination, he testified that he analyzed the substance he identified as marihuana, but he did not describe the tests he performed. Later, on cross-examination, Detective Rourke indicated that he performs both a microscopic and a chemical test when testing marihuana. However, he did not identify the chemical test, explain how he performed it, or discuss its scientific basis. Thus, it is questionable whether Detective Rourke's testimony satisfied the threshold reliability requirements under Evid.R. 702(C).
 {¶ 20} However, our review of the transcript also reveals that Williams failed to apprise the court of the exact nature of his objection, i.e., that he objected to the introduction of Detective Rourke's testimony based on the reliability requirements of Evid.R. 702(C). When Detective Rourke testified that the substance was marihuana, Williams did not object. Moreover, although Williams objected to the marihuana being admitted into evidence, he did not specifically raise the reliability requirements of Evid.R. 702(C). Rather, he argued (1) Detective Rourke was not qualified to testify as an expert and (2) Detective Rourke failed to establish that he tested the marihuana in a manner accepted by the Revised Code. Evid.R. 103(A)(1) provides: "Error may not be predicted upon a ruling which admits * * * evidence unless a substantial right of the party is affected and * * * a timely objection or motion to strike appears of record stating the specific ground ofobjection, if the specific ground was not apparent from the context * * *." (Emphasis Added.) Because Williams failed to raise his Evid.R. 702(C) objection to Detective Rourke's testimony with enough specificity to alert the state and the trial court of the exact nature of his concern, he has waived the issue for purposes of appeal. Accordingly, Williams second assignment of error is overruled.
 {¶ 21} We turn now to Williams' first assignment of error. It is not readily apparent whether he is challenging the sufficiency or the manifest weight of the evidence here. Accordingly, we will address both issues.
 {¶ 22} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citingJackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781,61 L.Ed.2d 560.
 {¶ 23} R.C. 2925.11 prohibits a person from knowingly possessing a controlled substance, such as marihuana. R.C.2925.11(A) and (C)(3). Possession of a controlled substance may be actual or constructive. See State v. Wolery (1976),46 Ohio St.2d 316, 329, 348 N.E.2d 351; State v. Haynes (1971),25 Ohio St.2d 264, 269-70, 267 N.E.2d 787. See, also, State v. Fairrow
(Nov. 27, 1995), Ross App. No. 95CA2096. A person has "actual possession" of an item if the item is within his immediate physical possession. State v. Fugate (Oct. 2, 1998), Scioto App. No. 97CA2546. "Constructive possession" exists when an individual is able to exercise domination and control over an item, even if the individual does not have immediate physical possession of it. State v. Hankerson (1982), 70 Ohio St.2d 87,434 N.E.2d 1362, syllabus; Wollery, supra. For constructive possession to exist, "[i]t must also be shown that the person was conscious of the presence of the object" Hankerson,70 Ohio St.2d at 91. The state may prove the existence of the various components of constructive possession of contraband by circumstantial evidence. See Jenks, 62 Ohio St.3d at 272-73. Moreover, two or more persons may have joint constructive possession of a particular item. State v. Mann (1993),93 Ohio App.3d 301, 308, 638 N.E.2d 585; State v. Riggs (Sept. 13, 1999), Washington App. No. 98CA39.
 {¶ 24} Williams argues there is no evidence that he possessed marihuana. He cites to the definition of possession in R.C.2925.01(K), which states: "`Possess' or `Possession' means having control over a thing or substance, but it may not be inferred solely from mere access to the thing or substance or through ownership or occupation of the premises upon which the thing or substance is found."
 {¶ 25} A defendant's mere presence in an area where drugs are located does not conclusively establish constructive possession.State v. Cola (1991), 77 Ohio App.3d 448, 450, 602 N.E.2d 730;Cincinnati v. McCartney (1971), 30 Ohio App.2d 45, 48,281 N.E.2d 855. However, a defendant's proximity to drugs may constitute some evidence of constructive possession. Fairrow, supra. Mere presence in the vicinity of drugs, coupled with another factor probative of dominion or control over the contraband, may establish constructive possession. Fugate, supra. See, also, State v. Rocker (Sept. 1, 1998), Franklin App. No. 97APA10-1341.
 {¶ 26} Williams contends the facts of his case are similar to those in In re Carter (1997), 123 Ohio App.3d 532,704 N.E.2d 625, where a police search of a vehicle revealed cocaine in the purse of one of the four occupants. The police found the purse in the rear passenger seat of the vehicle, directly behind Carter. In holding that there was insufficient evidence to sustain a conviction, we stated: "none of the evidence properly adduced at trial indicates that Carter possessed the cocaine in any way."In re Carter, 123 Ohio App.3d at 544. However, the facts of the present case are readily distinguishable from those in Carter. There, the appellant did not have ready access to the cocaine because it was located in a purse behind him. Here, the state's evidence demonstrated that Captain Moore and Officer Salisbury detected a strong odor of burnt marihuana coming from Williams' vehicle indicating that Williams had to know of its presence. During a search of the vehicle, Captain Moore discovered the marihuana in the center console, within close proximity to Williams, i.e., he had direct access to it. Moreover, the marihuana was lying directly on top of a receipt bearing Williams' name.
 {¶ 27} Because the marihuana was easily accessible by Williams and the officers testified they smelled burnt marihuana in the vehicle he was driving, a rational trier of fact could conclude Williams had constructive possession of the marihuana, i.e., he was able to exercise dominion and control over it. After viewing the evidence in a light most favorable to the prosecution, we conclude a rational trier of fact could have found the essential elements of possession of marihuana proven beyond a reasonable doubt. Accordingly, we find no merit in Williams' argument that his conviction is not supported by sufficient evidence.
 {¶ 28} We now consider whether Williams' conviction is against the manifest weight of the evidence. Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. Statev. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id. citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. If we find that the fact finder clearly lost its way, we must reverse the conviction and order a new trial. Id. We cannot reverse a conviction where the state has presented substantial evidence so that a reasonable trier of fact could conclude that all of the essential elements of the offense were established beyond a reasonable doubt. State v. Getsy,84 Ohio St.3d 180, 193-94, 1998-Ohio-533, 702 N.E.2d 866. We are also guided by the presumption that the trier of fact "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony." Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 29} Captain Moore's testimony establishes that the marihuana was in a readily usable form and in close proximity to Williams. According to Captain Moore, he found "loose leaf green vegetation" in the center console. Because the marihuana was in the center console, Williams was able to exercise dominion and control over it. Moreover, although Williams testified that he did not know the marihuana was in the vehicle, the trier of fact could have determined his testimony was not credible. The evidence shows he initially lied to the police about owning the vehicle. In addition, he testified the car did not smell of burnt marihuana, despite testimony by two officers that it did. Given this evidence, we cannot say the trier of fact clearly lost its way and created a manifest miscarriage of justice when it convicted Williams of possession of marihuana. Accordingly, we overrule Williams' first assignment of error and affirm his conviction.
Judgment affirmed.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.